**McMAHON BOOKS, INC. and Gem Electronics Distributors, Inc. individually and on behalf of all others similarly situated**

v.

**WILLOW GROVE ASSOCIATES, et al.**

**Civ. A. No. 84–3861.**

United States District Court,
E.D. Pennsylvania.

July 30, 1985.

Herbert B. Newberg, Philadelphia, Pa., Michael P. Malakoff, Pittsburgh, Pa., for plaintiffs.

Marvin Comisky, Leonard Dubin, Goncer M. Krestal, Philadelphia, Pa., for defendants.

## MEMORANDUM OPINION AND ORDER

VanARTSDALEN, District Judge.

The plaintiffs have moved for class certification in this action involving a dispute between the tenants of the Willow Grove Mall and the owners and operators of the mall. The representative plaintiffs have sued to recover for alleged overcharges on pro-rata tax, maintenance and utility billings incidental to their leasing space at the mall and for other damages, including treble damages under the RICO statute,[1] stemming from alleged misrepresentations by the mall owners.

McMahon Books, Inc. (McMahon) leased space in the Willow Grove Mall to operate a bookstore, but it is no longer in business at that mall. Gem Electronics Distributors, Inc. (Gem), a retail sales outlet, currently leases space in the Willow Grove Mall.

The complaint alleges that the defendants developed a fraudulent scheme to rent space in the mall. Defendants allegedly carried out this scheme by providing prospective tenants with a written standardized Confirmation of Business Terms (CBT) that contained misrepresentations regarding the estimated taxes, maintenance charges and utility charges that would be assessed to the tenants. In addition to the representations in the CBT, plaintiffs allege that defendants, apparently through oral statements to prospective tenants, also misrepresented the degree to which space

---

1. 18 U.S.C. § 1964(c).

in the mall would be leased and/or the degree to which the mall would be leased with tenants open for business on the mall's opening date. Plaintiffs also allege that defendants represented that all three major department stores would be open on the mall's opening date, whereas one of those stores, Abraham & Strauss, was not open on that date. Finally, plaintiffs allege that defendants overstated the sales volume that prospective tenants could reasonably anticipate by basing the estimates on a substantially fully leased mall rather than an underleased mall.

Plaintiffs seek damages based on six separate counts in their Fourth Amended Complaint: (1) the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1964(c) presumably for a violation of 18 U.S.C. § 1962(c); (2) common law fraud; (3) negligent misrepresentation; (4) strict liability for innocent misrepresentation; (5) breach of contract; and (6) RICO, 18 U.S.C. § 1964(c), for a violation of 18 U.S.C. § 1962(a). Plaintiffs claim that they have been and continue to be overcharged for minimum rental fees, utilities, common area maintenance and taxes. They seek declaratory, injunctive and monetary relief.

Plaintiffs have moved for class certification. They request that the court certify a plaintiff class consisting of "[a]ll tenants who received an unrevised Confirmation of Business Terms prior to executing their lease with the Willow Grove Mall." Plaintiffs' Reply Brief at 45.

Federal Rule of Civil Procedure 23 governs class actions in federal court. An action may be maintained as a class action if all four prerequisites of Rule 23(a) are satisfied and the court finds any one of the three subparagraphs of Rule 23(b) applicable. Rule 23(a) provides:

> *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Rule 23(a)'s prerequisites are commonly referred to as: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

Plaintiffs have moved for certification of a class pursuant to Rule 23(b)(1), 23(b)(2) and 23(b)(3), but they primarily rely on 23(b)(3). Rule 23(b)(3) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any question affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The party seeking class certification bears the burden of establishing that certification of a class is appropriate. *Fickinger v. C.I. Planning Corp.*, 103 F.R.D. 529, 531 (E.D. Pa.1984).

I find that the plaintiffs have established that class certification is appropriate. The relevant facts will be discussed within the framework of the various subdivisions of Federal Rule of Civil Procedure 23.

■ Plaintiffs are required under Rule 23(a)(1) to establish that "the class is so numerous that joinder of all members is impracticable." Although courts have generally found the numerosity requirement satisfied where the class exceeds 100, the number of class members is not the sole determinative factor in considering whether the class is so numerous that joinder is impracticable. *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D.Pa.1975).

■ In this case, plaintiffs estimate there are approximately 125 class plaintiffs.[2] Despite the relatively large number of putative class members, it does not inevitably follow that joinder is impracticable.

---

**2.** This figure does not appear to be contested.

All of the putative class members at one time leased space at the mall. Presumably many of them are still tenants at the mall. The mall tenants have formed a tenants' association. McMahon Deposition at 105; Fine Deposition at 59–60. The mall is located in this district and, therefore, all the putative class members conduct business—or formerly conducted business—in this district. The mere number of putative plaintiffs does not establish that joinder would be impossible or impractical. There would appear to be no difficulty in identifying, locating and communicating with all putative plaintiffs. The putative plaintiffs are readily identifiable by their association with the mall, and the tenants' association provides a convenient vehicle for coordinating joinder. Litigation in this district pursuant to joinder would not appear to create any great hardship for the putative plaintiffs who already conduct business in this district and who may want to join in this litigation.

Although plaintiffs estimate 125 potential class members, there is no evidence as to the number of tenants who desire to assert any claim against the defendants. At best, the evidence supports the inference that anywhere from thirty to fifty tenants who attended the tenants' association meetings are interested in proceeding against defendants. *See* Fine Deposition at 59–60.

All potential class members who want to join could seek leave to join by motion. Such individual joinder would be neither difficult nor impossible. Should a substantial proportion of the potential class members seek joinder upon motion, however, the procedure would be inefficient, costly, time-consuming, and probably confusing to all parties litigant. I think it is clear, therefore, that "joinder of all members is impracticable." As Chief Judge Luongo has admonished: "only impracticability, not impossibility, is required [under Rule 23(a)(1)]." *Fox v. Prudent Resources Trust,* 69 F.R.D. at 78. In the present case, joinder would not be impossible, but it would be impracticable.

The requirement of Rule 23(a)(2) that there must be questions of law or fact common to the class is clearly satisfied. This threshold requirement is significantly less rigorous than the 23(b)(3) requirement that common questions of law or fact predominate over questions affecting only individual class members. All of the class members received the CBT, and there were similar representations made to each class member. The representations in the CBT and other common representations raise common issues of law and fact. The RICO counts also raise common questions of law and fact. Common to any claims of class members for damages under RICO for a violation of section 1962(c) is the question whether defendants conducted the affairs of an enterprise through a pattern of racketeering activity. The commonality requirement of Rule 23(a)(2) is satisfied.

■ In addition to the requirement that there be common questions of law or fact, Rule 23(a)(3) requires that the claims or defenses of the representative parties must be typical of the claims or defenses of the class. In this case there is some question whether the claims of either class representative are typical of those of the class.

McMahon's claim differs from the typical claim in that McMahon was allegedly driven out of business at the mall. Unlike the typical current-tenant members of the putative class, McMahon is no longer in business at the mall. For purposes of typicality, that distinction does not disqualify McMahon as a class representative. The distinction goes to the extent and nature of damages, but there is no substantial difference between the type of claims asserted by McMahon and those of the typical class member.

■ The typicality of class-representative Gem's claim is drawn into question because Gem did not sign a lease for space in the mall until more than two months after the mall opened. One of the principal contentions in plaintiffs' complaint is that defendants misrepresented the degree to which the mall would be leased and stores open for business as of the opening date of

August 11, 1982. Class plaintiffs 'claim that the projected sales figures they relied upon were inflated because the mall was underleased at the time of its opening. Presumably plaintiffs' contention is that with less stores open the mall would attract fewer customers and individual stores' sales figures would be lower than projected for a substantially fully leased mall. Gem, however, did not sign a lease until October of 1982, two months after the mall opened, and did not open its store until March of 1983, approximately six months after the mall opened. *See* Fine Deposition at 32, 52–53. It is doubtful, therefore, that plaintiffs' claims regarding representations as to how much of the mall would be leased by .the opening date would apply to Gem. Nevertheless, Gem asserts the basic claims regarding overcharges in incidental expenses, and misrepresentations in the CBT, which are, for the most part, typical of the claims to be asserted on behalf of all class members. The allegations of the two representative plaintiffs are typical of the allegations and claims of the class. The typicality requirement of Rule 23(a)(3) is satisfied.

■ The final requirement of Rule 23(a) is that the representative parties must fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). The Third Circuit has established that "[a]dequate representation depends on two factors: (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239, 247 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975).

I am satisfied that plaintiffs' attorneys are qualified, experienced and generally able to conduct the proposed litigation. There is, however, some question whether the interests of McMahon might become antagonistic to those of the class.

McMahon is no longer a tenant at the mall. The complaint seeks declaratory, injunctive and monetary relief. There is a potential for the interests of current-tenant plaintiffs to diverge from those of former-tenant plaintiffs with respect to the nature of relief to be sought on behalf of the class. Although the interests of current tenants may tend toward seeking prospective relief to improve their future financial viability, former tenants' interests plainly favor direct recovery of monetary relief for past damages. In the course of any settlement negotiations that may take place, plaintiffs may be forced to sacrifice in one area of relief sought in order to obtain desired relief in another area. McMahon claims damages based not solely on overcharges and lower-than-expected sales volume, but also on the loss of its entire business, which it claims was caused by defendants' culpable conduct. McMahon's special interest with respect to damages may conflict with the best interests of the class. Unlike the current tenants, McMahon has no interest in the continued economic viability of the mall. *Cf. Aamco Automatic Transmissions, Inc. v. Tayloe,* 67 F.R.D. 440, 446 (E.D.Pa.1975).

Many courts have found that a former franchisee could not adequately represent a class consisting of both former and present franchisees. *E.g., id.* at 445–47. Similarly, the interests of former tenants may, at some point in this litigation, diverge from and conflict with those of current tenants. If any such conflict should arise, however, the interests of all class members could be sufficiently protected by certifying subclasses consisting of former and current tenants respectively. Fed.R.Civ.P. 23(c)(4)(B); *see also* Fed.R.Civ.P. 23(d); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434, 449 (3d Cir.1977).

Defendants claim that neither representative plaintiff can adequately represent the class because the representatives and the class members are active business competitors with antagonistic interests. That argument is unconvincing. Although the various tenants may have a number of antagonistic interests in that they compete against each other in business, there is no evidence or suggestion that their interests

vis-a-vis the defendants with respect to the subject matter of this action are antagonistic in any way.

The four prerequisites for maintaining a class action outlined in Federal Rule of Civil Procedure 23(a) have been satisfied. In addition to establishing the four prerequisites of Rule 23(a), plaintiffs seeking class certification must establish the applicability of one of the subdivisions of Rule 23(b). Plaintiffs rely primarily upon subdivision 23(b)(3), which provides that an action may be maintained as a class action if the requirements of subdivision 23(a) are satisfied and "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). In this case, the basic thrust of the complaint is that defendants are liable for fraud. In addition to the fraud count, plaintiffs seek to recover damages based on RICO violations, breach of contract, negligent misrepresentation and strict liability for innocent misrepresentation. Although there are significant common questions of law and fact likely to arise in this litigation, there are also many factual and legal questions that will be unique to individual class members' claims.

The Advisory Committee Notes to the 1966 Amendments to Rule 23 discuss whether cases similar to this one are appropriate for class-action treatment, but reach an equivocal conclusion:

a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class. On the other hand, although having some common core, a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of

reliance by the persons to whom they were addressed.

Federal Rule of Civil Procedure 23, Advisory Committee Notes, 1966 Amendment, Subdivision (b)(3). It is difficult to determine at this stage of the proceedings whether common questions of law and fact will predominate in this action which involves allegations of a fraud perpetrated on numerous persons by the use of similar representations. The common core of across-the-board representations in the Confirmation of Business Terms (CBT), suggests that class certification would be appropriate. *Cf. Eisenberg v. Gagnon,* 766 F.2d 770, 786–87 (3d Cir.1985); *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir.1977). Each tenant, however, conducted separate negotiations with the defendants and each independently entered into a lease with defendants. The separate negotiations suggest that there may be material variations in the representations made to the individual tenants. Plaintiffs contend, however, that the oral representations made to the individual tenants were all essentially the same and that defendants had a single sales pitch they gave to each prospective tenant. On the basis of the current record, the alleged misrepresentations, both written and oral, appear to be similar for each tenant. Further discovery may reveal substantial variations in the representations to each tenant, but, at this point, the record does not reflect such material variations in the representations to individual tenants as to warrant denial of class certification.

■ More troublesome than any variation in representations are the individual questions that may be presented in establishing reliance on those representations. With respect to fraud and misrepresentation, reliance of each plaintiff must be established. *See Tober v. Charnita, Inc.,* 58 F.R.D. 74, 84–85 (M.D.Pa.1973); *see also Klemow v. Time, Inc.,* 466 Pa. 189, 352 A.2d 12, 16 n. 17, *cert. denied,* 429 U.S. 828, 97 S.Ct. 86, 50 L.Ed.2d 91 (1976). There appears to be no basis in this case, on the current record, for a presumption of reliance or satisfaction of the reliance element as to the entire class by reason of a

fraud on the market. *Cf. Blackie v. Barrack,* 524 F.2d 891 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). In federal securities law cases, the federal courts have adapted the concepts of common law fraud to a unique situation. Class actions are particularly appropriate in securities fraud cases because securities frauds often victimize a large number of people to a relatively small degree and one fraudulent scheme can affect purchasers or sellers of securities across the nation. Under common law fraud, individual reliance must be established, but individual proof of reliance may be less stringent in federal securities law class actions. Notwithstanding the possible class-wide proof of reliance that may be available under federal securities law, Pennsylvania common law, which apparently is applicable to this case, continues to require individual proof of reliance. *See Klemow v. Time, Inc.,* 352 A.2d at 16 n. 17.

Although it appears that the reliance element of plaintiffs' claims will probably require individualized proof, it is possible that the nature and extent of each tenant's reliance will prove to be so similar that common issues of law and fact will predominate despite the need for individualized proof of reliance. *Cf. Eisenberg v. Gagnon,* 766 F.2d 770, 786–87 (3d Cir.1985) ("This case did not present extraordinarily complex questions of causation and reliance. . . ."). Further development of the record may demonstrate that establishing reliance will require such extensive individualized proof that common issues of law and fact no longer predominate, but, at the present time, the reliance issue does not preclude class certification.

The fraud and misrepresentation claims depend to a great degree on written representations that were made to each of the putative class members in the CBT.[3] Although each of the class members conducted separate negotiations, it appears on the current record that similar oral representa-tions may have been made to each class member. The fraud and misrepresentation claims, therefore, present significant common issues of law and fact. *Cf. M. Berenson Co. v. Faneuil Hall Marketplace,* 100 F.R.D. 468 (D.Mass.1984).

Plaintiffs' breach-of-contract claims appear to present a mixture of common and individual issues. Each of the tenants signed a separate lease contract, but the leases were all similar form leases containing essentially the same terms. Each breach-of-contract claim depends on the estimates in the CBT being enforced as part of the overall lease agreement. To the extent that enforcement of the CBT estimates as part of the overall lease agreement depends upon a showing of fraud, *see National Cash Register Co. v. Modern Transfer Co.,* 224 Pa.Super. 138, 302 A.2d 486 (1973) (in the absence of fraud, accident or mistake, prior representations or agreements are merged in or superseded by the subsequent contract), the issues with respect to the breach-of-contract claims may be similar to the issues with respect to the fraud claims. Pure interpretation of the lease agreements presents issues common to the class members because all of the leases contain essentially the same terms. On the other hand, if the court is called upon to vary the terms of the lease, common issues may be presented only to the extent that there are common issues with respect to fraud.[4]

The RICO counts present significant common issues of fact and law because many of the elements of RICO civil actions focus on the conduct of the defendants. Plaintiffs claim that a fraudulent scheme by the defendants injured each member of plaintiffs' class. RICO, in section 1964(c), provides a civil remedy for "[a]ny person injured in his business or property by reason of a violation of section 1962 [of RICO]." 18 U.S.C. § 1964(c). Section 1962 provides that it is unlawful for any person

---

**3.** By definition, each of the class members received the CBT containing unrevised estimates.

**4.** Statements in this memorandum as to legal issues likely to arise are not, of course, definitive rulings by the court on any of those legal issues.

to engage in certain types of racketeering activity as described in that section subject to the definition of terms in section 1961. 18 U.S.C. §§ 1961–1962.

In a case such as this, where a number of plaintiffs claim injury from a single fraudulent scheme allegedly constituting racketeering activity on the part of the defendants, each of the plaintiffs' claims will focus on defendants' conduct to establish a violation of section 1962. The issues of law and fact involved in making out a violation of section 1962 will generally be common to all plaintiffs' claims, because plaintiffs are asserting a single fraudulent scheme by the defendants which injured each plaintiff.

■ For example, to recover damages for a violation of 18 U.S.C. § 1962(c), plaintiffs must establish that defendants were "persons" who were employed by or associated with an "enterprise" which was engaged in interstate commerce and that they conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity. In establishing a violation of section 1962(c), a number of issues of law and fact will be common to each plaintiff's case. Plaintiffs must establish that defendants are "persons" as defined under the act. 18 U.S.C. § 1961(3). They must establish the existence of an "enterprise" as defined by the act, 18 U.S.C. § 1961(4), and that the enterprise was engaged in interstate commerce. The defendants must have been employed by or associated with that enterprise. The defendants must conduct or participate in the conduct of the enterprise's affairs through a "pattern of racketeering activity." To establish a "pattern of racketeering activity," plaintiffs must show at least two acts of "racketeering activity" occurring within ten years. *See generally Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, — n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985) (discussing the pattern requirement: "while two acts are necessary, they may not be sufficient"). Each act relied upon as "racketeering activity" must be shown to fall within the definition of that term in the act. 18 U.S.C. § 1961(1).

In their complaint plaintiffs allege that "use of the mails to send false and fraudulent statements to obtain leases and receive payments" constituted racketeering activity by violating the federal mail fraud statute. Presumably, the same acts of mail fraud will be proffered by plaintiffs to establish a pattern of racketeering activity applicable to all of the plaintiffs' claims. Moreover, plaintiffs claim that all class members were injured by a single fraudulent scheme. According to plaintiffs' RICO allegations, one of the defendants, Willow Grove Associates, is an enterprise engaged in interstate commerce. Two of the other defendants are alleged to have been associated with the enterprise and to have conducted the fraudulent scheme which is alleged to constitute a pattern of racketeering activity. All of the issues concerning a violation of section 1962(c) appear to be common to the claims of all the class members.

■ Although the RICO claims present many common issues of law and fact, they also present individual issues. Plaintiffs are not entitled to recover damages simply on the basis of defendants' violation of section 1962. In order to recover damages under section 1964, plaintiffs must establish that they were injured in their business or property by reason of a violation of section 1962. The Supreme Court recently ruled that "harm caused by predicate acts sufficiently related to constitute a pattern" is compensable injury. *Sedima, S.P.R.L. v. Imrex Co.,* — U.S. —, — – —, 105 S.Ct. 3275, 3285–87, 87 L.Ed.2d 346 (July 1, 1985). In order to recover any damages in this case, plaintiffs will have to establish the nature and extent of their injuries. The defendants conducted separate negotiations with each of the plaintiffs and entered into separate but similar lease agreements with each of them. It is possible that significant individual issues of law and fact will arise in the course of establishing that the class members are entitled to recover damages under RICO. Never-

theless, common issues predominate over those potential individual issues. In order to prevail on their RICO claims, plaintiffs must establish a course of conduct by defendants falling within the activity prohibited by the act. That burden involves significant common issues which predominate over individual issues.

Assessing all the claims in plaintiffs' complaint, I find that common issues of law and fact predominate over individual issues. Certain of the state law claims present a weaker case of common issues than the federal RICO claims, but, at this point, it is appropriate to certify a class to be represented with respect to all counts of the complaint. Considerations of judicial economy dictate that this controversy should be resolved in a single litigation if possible. Later developments may require decertification of the class with respect to certain claims, but, at this point, the entire case may proceed as a single class action.

In addition to requiring the court to find common issues of law and fact predominate, Rule 23(b)(3) requires the court to find "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R. Civ.P. 23(b)(3). The Rule suggests that:

> The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the·difficulties likely to be encountered in the management of a class action.

*Id.* Although the Rule indicates that these factors bear upon both the common-issues finding and the superiority finding, they appear to be more helpful in making the latter finding.

The first factor to be considered is the interest of members of the class in individually controlling the prosecution of separate actions. Fed.R.Civ.P. 23(b)(3)(A). This factor does not weigh strongly in favor or against class certification. The complaint alleges that each plaintiff's damages are in excess of $10,000 and that there is diversity jurisdiction.[5] When individual plaintiffs have such significant financial interests, they may desire to control their own claims. *See In re Arthur Treacher's Franchise Litigation,* 93 F.R.D. 590, 595 (E.D.Pa.1982); *Kekich v. Traveler's Indemnity Co.,* 64 F.R.D. 660, 668 (W.D.Pa. 1974). On the other hand, there is no rule that such significant claims are inappropriate for class-action treatment. The Supreme Court has held that federal courts do not have jurisdiction based on diversity of citizenship over class-action claims except to the extent that each class member's claim satisfies the $10,000 amount-in-controversy requirement. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). The holding of *Zahn* clearly contemplates that it is appropriate for actions to proceed as class actions in certain cases even though each class member has a highly valued claim. The high value of the individual claims of these tenants does not, standing alone, give the individual class members such a strong interest in controlling their own claims as to make class certification inappropriate.

The case for class certification is strongest where the individual plaintiffs' claims are so small that denying class certification would effectively preclude any recovery. In this case each plaintiff has a significant claim. That simple fact, however, does not

---

5. In order for this court to assert diversity jurisdiction, each member of the class must satisfy the $10,000.00 amount-in-controversy requirement of 28 U.S.C. § 1332. *Zahn v. International Paper Co.,* 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973); *Rauch v. United Instruments,* 548 F.2d 452, 455 (3d Cir.1976). The complete-diversity requirement of *Strawbridge v. Curtis,* 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806), applies only among the class representatives. As long as the representative plaintiffs and the defendants satisfy the diversity requirement, there is diversity jurisdiction over all the class members' claims. *See Supreme Tribe of Ben Hur v. Cauble,* 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673 (1921).

imply that class action is an inferior method for the fair and efficient adjudication of this controversy.

According to Rule 23(b)(3)(B), the court should consider "the extent and nature of any litigation concerning the controversy already commenced by ... members of the class." The parties have not brought any such litigation to the court's attention, and this factor, therefore, is not significant in this case.

The court should also consider "the desirability or undesirability of concentrating the litigation of the claims in the particular forum." Fed.R.Civ.P. 23(b)(3)(C). This factor weighs in favor of class certification. If a class were certified, all the tenants who fail to opt out of the class would have their claims litigated in this forum. Litigation of all the claims in this forum would be more efficient than dispersed litigation. The activity that forms the subject matter of these claims took place in this forum, and this forum would appear to be the most convenient one for all concerned parties to litigate the claims. If a class were not certified, some plaintiffs might sue in other forums. Any such cases might be transferred back to this forum pursuant to 28 U.S.C. § 1404. Thus failure to certify a class would not necessarily lead to dispersed litigation. Nevertheless, class certification would further desirable concentration of the litigation of these claims in this forum and avoid possible future delays in determining transfer motions and similar interlocutory rulings.

█ Finally, Rule 23(b)(3)(D) suggests that the court should consider "the difficulties likely to be encountered in the management of a class action." In this case, for the most part, the difficulties likely to be encountered stem from the individual issues presented. As noted above, certain issues, such as reliance and damages, may present individual issues that will complicate the management of a class action. Moreover, the adverse interests of former and present franchisees may eventually make proper management of a class action somewhat difficult. Further action by the court may be required to handle such difficulties as they arise, but, despite the potential for such difficulties, a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

█ The four prerequisites of Federal Rule of Civil Procedure 23(a) have been satisfied, and certification of a class of plaintiffs pursuant to 23(b)(3) is appropriate because common issues of law and fact predominate over individual issues and a class action is superior to other available methods to adjudicate this controversy.

I am somewhat reluctant to allow the class action mechanism to be used to force satisfied tenants to litigate their claims. If certain tenants are satisfied with their business relationship with the defendants, this class certification should not be a signal to those parties that they should assert any claims against the defendants, or that they should refuse to assert any claims. The class is well-defined, and effective notice to all class members should not be difficult. The opt-out procedures of Federal Rule of Civil Procedure 23(c)(2) will allow those who are satisfied with their business relationship with defendants to refuse to participate in this action should they so desire.

## ORDER

Upon consideration of plaintiffs' motion for class certification and supporting and opposing memoranda of law, for the reasons stated in the accompanying memorandum,

It is Ordered that plaintiffs' motion for class certification is granted and this action shall proceed as a class action in accordance with Federal Rule of Civil Procedure 23(b)(3). Plaintiffs McMahon Books, Inc. and Gem Electronics Distributors, Inc. and their counsel are appointed to serve as representatives for the following class of plaintiffs in this litigation:

All tenants of the Willow Grove Mall who received an unrevised Confirmation

of Business Terms prior to executing a lease with the Willow Grove Mall.

It is further Ordered that plaintiffs shall file by motion a proposed notice to the class as specified in Federal Rule of Civil Procedure 23(c)(2) within twenty (20) days of this order, together with any proposed order for further appropriate pretrial proceedings and scheduling.