**Rebecca RODRIGUEZ, et al.**

v.

**Michael McKINNEY, et al.**

Civ. A. No. 93–1996.

United States District Court,
E.D. Pennsylvania.

June 6, 1994.

Alan White, Community Legal Services Inc., Philadelphia, PA, for plaintiffs.

John Rogers Carroll, Carroll & Carroll, David R. Hoffman, U.S. Attorney's Office, James G. Sheehan, Asst. U.S. Atty., Civ. Div., Philadelphia, PA, Mary Nell Clark, U.S. Dept. of Justice, Commercial Litigation Branch, and Sean W. Colligan, U.S. Dept. of Justice, Civ. Div., Washington, DC, for defendants.

### MEMORANDUM AND ORDER

ANITA B. BRODY, District Judge.

Before me is Plaintiffs' Motion for Class Certification in this civil RICO claim based on mail and bank fraud. I am being asked to

decide whether common issues of law and fact predominate on plaintiffs' theory that they incurred student loan debts because defendant used the mails to falsely certify to the government that plaintiffs were able to benefit from school curriculums. The government then authorized the student loans to students based on the representations, and plaintiffs enrolled in defendant's schools because they were offered loans. I conclude that common issues do predominate. I expect that I will certify this class action, but will not do so until plaintiffs further define the class in accordance with this opinion.

## I. *Statement of Facts*

Named plaintiffs Rebecca Rodriguez and Tene Freeman were students enrolled at the Watterson School of Business and Technology, one of three vocational schools operated by the same parent company, CareerCom. Plaintiffs initially sued three defendants: Michael McKinney and Robert Smith—both former presidents of CareerCom—and the United States Department of Education (the government). The claims against Smith were dismissed without prejudice because process could not be served. Plaintiff has already settled with the Department of Education.

The outstanding claim against McKinney is brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Plaintiffs' RICO claim alleges that defendants "conducted ... an ... enterprise through a pattern of predicate acts of mail fraud and bank fraud and conspiracy to commit mail fraud and bank fraud, in violation of 18 U.S.C. §§ 1341, 1344, and 20 U.S.C. § 1962(c), and conspired to violate § 1962(c), in violation of 18 U.S.C. § 1962(d)." Complaint ¶ 68. Plaintiffs seek certification of a class of "all students enrolled at CareerCom's schools in Philadelphia who did not have a high school diploma or G.E.D. when they were enrolled in Career-Com's trade school courses." Complaint ¶ 61.

For a student to obtain a federally insured loan or grant to attend school, the student and the school must meet certain requirements. 20 U.S.C. § 1077. If the student does not have a high school diploma or general education diploma (G.E.D.), he or she must have the "ability to benefit" from school courses. 20 U.S.C. § 1091. If a vocational school admits students without a high school diploma or G.E.D., the school must determine that those students have an "ability to benefit." 20 U.S.C. § 1085. The school must determine "ability to benefit" by administering "a nationally recognized, standardized or industry developed test, subject to criteria developed by the appropriate accrediting association." 20 U.S.C. § 1091(d)(3)(A).

McKinney began managing vocational schools in 1979. Beginning in 1982, he and Smith managed vocational schools through a corporate entity called Educom. Educom changed its name to CareerCom in 1986. Complaint ¶ 15. McKinney left CareerCom in 1989, when he allegedly received $3 million as well as payments of $200,000 per year payable until 1996. Complaint ¶ 31. Career-Com filed for bankruptcy in 1992. Complaint ¶ 44.

Plaintiffs claim that, while managing the schools, Smith and McKinney set artificially low cut-off scores for several different admissions tests. They then falsely certified to the government that students were able to benefit and that CareerCom schools were only admitting students who had an ability to benefit. To perpetrate the fraud, defendant mailed to the government Institutional Eligibility Applications for CareerCom schools, responses to government audits and investigations defending the schools' admissions practices, and hundreds of thousands of students loan applications. Complaint ¶ 68, 69. The mailings occurred between 1980 and 1992. In addition, the schools misled the students by failing to inform them of their lack of ability to benefit from courses. As a result, the government insured student loans for CareerCom students, and students accepted and enrolled. The schools profited from students' tuition dollars, while students were left saddled with debt and without the "training and placement for which they contracted." Complaint ¶ 70.

Plaintiff Rebecca Rodriguez enrolled in the Medical Assistant course at the Watterson School in the Spring of 1988 without a high school diploma or G.E.D. The school admit-

ted Rodriguez based on a score of 10 of 40 on the "ASSET" admissions test. Rodriguez withdrew from the course after six weeks and obtained a G.E.D. elsewhere. She has an outstanding student loan debt of $1,600 from her enrollment in Watterson. Complaint ¶ 46–52.

Plaintiff Tene Freeman enrolled in the Watterson School's medical assistant course in April 1991 without a high school diploma or G.E.D. The school admitted Freeman based on a score of 118 on the "CPAT" test. Freeman completed coursework, but Watterson closed before she could receive placement services and she has not found work in her field. Freeman owes $2,625 from enrollment at Watterson. Complaint ¶ 53–60.

## II. *Conclusions of Law*

■ In deciding a Motion for Class Certification, a court may not consider "whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 178, 94 S.Ct. 2140, 2153, 40 L.Ed.2d 732 (1974) (quoting *Miller v. Mackey International,* 452 F.2d 424 (5th Cir.1971)). The sole question is whether plaintiffs' allegations meet the requirements of Federal Rule of Civil Procedure 23. A class must comply with each of the elements of Rule 23(a) as well as one of the requirements of 23(b). Plaintiffs contend that they have satisfied each of the elements of 23(a) and the requirement of 23(b)(3).

### A. Rule 23(a)

Rule 23(a) requires that:

(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class,

(4) the representative parties will fairly and adequately protect the interest of the class.

Plaintiffs satisfy all four elements.

### 1. Numerosity

Plaintiffs suggest that there are over 1,000 students in the class. Defendant does not dispute that plaintiffs satisfy the numerosity requirement of Rule 23(a)(1). *See Torres v. CareerCom,* No. 91–3587, 1992 WL 245923 (E.D.Pa. September 18, 1992).

### 2. Commonality

Defendant also does not dispute that plaintiffs satisfy the commonality requirement of Rule 23(a)(2). This requirement is less stringent than the predominance requirement of Rule 23(b)(3), discussed below, and is satisfied by the questions of law or fact involved in proving the elements of the RICO claim. *See Torres.*

### 3. Typicality

■ Defendant does dispute that plaintiffs are typical of the class. Rodriguez enrolled in the Medical Assistant program in 1988 after having been certified based on the ASSET test and quit after six weeks. Freeman enrolled in and completed the same program based on the CPAT test in 1991, after defendant McKinney had left the school. Defendant argues that these plaintiffs are not typical of the putative class plaintiffs, who enrolled in the schools in various years, based on various tests, and with various results.

Typical does not mean "identical." The inquiry is whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." *Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.1985) (quoting *Weiss v. York Hospital,* 745 F.2d 786 (3d Cir.1984)).

Here, each plaintiff bases his or her claim on the same legal theory, civil RICO. That similarity is sufficient to satisfy the typicality requirement of Rule 23(a)(3). *See Torres v. CareerCom Corp.,* No. 91–3587, 1992 WL 245923 (E.D.Pa. September 18, 1992) (typicality satisfied where plaintiffs attended school based on misrepresentations about ability to benefit from program); *Strain v. Nutri/System,* 1990 WL 209325, 1990 U.S.Dist. LEXIS 17031 (1990) (plaintiffs who enrolled in Nutri/System based on false advertising claims satisfied typicality).

### 4. Adequate Representation

This requirement ensures that "representatives and their attorneys will competently, responsibly and vigorously prosecute the suit, and that the relationship of the representative parties' interests to those of the class are such that there is not likely to be divergence in viewpoint or goals in the conduct of the suit." *Bogosian v. Gulf Oil Corporation,* 561 F.2d 434, 449 (3d Cir.1977). Defendant does not dispute that plaintiffs satisfy this requirement.

### B. Rule 23(b)(3)

Under Rule 23(b)(3), the court must find that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### 1. Predominance

A civil RICO action may be brought by persons injured in their "business or property *by reason of* a [RICO violation]." 18 U.S.C. § 1964(c) (emphasis added). A RICO violation is "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex, Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). "Racketeering activity" is the commission of a "predicate act," which may be mail fraud or bank fraud. *See Sedima,* 473 U.S. at 495, 105 S.Ct. at 3284; 18 U.S.C. § 1961(1).

The "by reason of" language of RICO requires that the RICO violation be the "proximate cause" of plaintiff's injury. *Holmes v. Securities Investor Protection Corp.,* —— U.S. ——, ——, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992). Proximate cause is present if the RICO violation is a "substantial factor" in causing the injury. *Brittingham v. Mobil Corp.,* 943 F.2d 297, 304 (3d Cir.1991). The injury also must be "reasonably foreseeable or anticipated as a natural consequence" of the violation. *Id.*

Plaintiff students claim that they were injured by reason of a RICO violation predicated on mail and bank fraud in two ways. First, they claim that defendant misled them directly through use of the mails by failing to inform them of their inability to benefit from coursework. This fraud resulted in students enrolling in CareerCom schools, defendant profiting from tuition dollars, and students leaving without training and saddled with debt.

Second, the students claim that defendant falsely certified to the government through use of the mails that they, the students, were able to benefit from the curriculum and that CareerCom only admitted students with an ability to benefit from the curriculum. Defendant's certification caused the government to authorize loans to the students, resulting in the students enrolling in CareerCom schools, defendant profiting from tuition dollars, and students leaving with debt.

The Advisory Committee Notes to the 1966 Amendments to Rule 23 discuss whether fraud cases may present common issues of law and fact:

> a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action.... On the other hand, ... a fraud case may be unsuited for treatment as a class action if there was material variation in the representations made or in the kinds or degrees of reliance by the persons to whom they were addressed.

*McMahon Books, Inc. v. Willow Grove Associates,* 108 F.R.D. 32 (E.D.Pa.1985) (quoting Advisory Committee Notes). In a case involving various misrepresentations or degrees of reliance, common issues still may predominate if questions of causation and reliance are not "extraordinarily complex," *Eisenberg v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985), or if a "presumption of reliance" is appropriate, *McMahon Books, Inc. v. Willow Grove Associates,* 108 F.R.D. 32, 37 (E.D.Pa. 1985). Reliance may be presumed only "where it is logical to do so." *Sharp v. Coopers & Lybrand,* 649 F.2d 175, 188 (3d Cir.1981), *cert. denied* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982). Without reaching the legal sufficiency of either of plaintiffs' theories, I conclude that individualized issues predominate on the first theory, but that

common issues may predominate on the second.

◼ Plaintiffs' first theory is substantially similar to the one presented in *Torres v. CareerCom*, No. 91–3587, 1992 WL 245923 (E.D.Pa. September 18, 1992), where plaintiffs brought a RICO claim against Career-Com based on mail and wire fraud. Plaintiffs accused CareerCom of fraudulently concealing or misrepresenting the "quality of its programs, the ability of unqualified enrollees to benefit from the courses, the likelihood of securing employment upon graduation, the placement assistance provided by the school and the amount of student loan payments." *Torres*, slip op. at 1. As a result, plaintiffs enrolled in CareerCom schools and left with student loan debt. *Torres*, slip op. at 2.

My esteemed colleague Judge Jay C. Waldman denied the request for class certification. To succeed on the RICO claim, Judge Waldman concluded, each plaintiff would have to prove "individual causation and reliance" on defendant's misrepresentations. *Torres*, slip op. at 9. "Given the variety in the content and mode of the representations alleged and because the fraudulent nature of some of them allegedly turns on the qualifications of various enrollees, proof of detrimental reliance and causation in the instance case would be particularly individualized." *Torres*, slip op. at 11.

Similarly, the current plaintiffs posit that students enrolled in CareerCom schools because defendant failed to inform them they had no "ability to benefit." Plaintiffs do not dispute that, under this theory, each plaintiff must prove that he or she relied on the misrepresentations. I agree with Judge Waldman that proof of reliance will turn on the qualifications of students and their varying degrees of reliance, creating complex and individualized issues improper for class litigation. *See Torres.*

Plaintiffs argue that reliance should be presumed because every student would consider "ability to benefit" relevant to a decision to enroll in school. *See Plaintiffs' Reply Brief* (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir.1977)). I disagree. It is not "logical" to presume reliance in this case under this theory. First, reliance may not

be presumed from defendant's failure to disclose to students that they did not qualify as "able to benefit" within the meaning of the statute. "Ability to benefit" is a term of art defined by the statute. Students would not necessarily understand that term or base an enrollment decision on being labeled "able to benefit." *See Rosenstein v. CPC International, Inc.*, No. 90–4970, 1991 WL 1783 (E.D.Pa. January 8, 1991) (denying class certification in a case against Mazola margarine based on misrepresenting cholesterol levels because not all consumers are concerned about cholesterol levels). Second, reliance may not be presumed from defendant's failure to disclose to students their actual inabilities, regardless of their statutory designation. Students may have considered various factors in deciding to enroll in CareerCom schools. It is not apparent that they were persuaded solely by the school's representation of their ability. *See Freedman v. Arista Records, Inc.*, 137 F.R.D. 225, 229 (E.D.Pa. 1991) (refusing to certify putative class of album purchasers who claimed they were defrauded: "What causes a person to respond positively to a performance is a complex matter ... not susceptible to a class based determination of inducement").

◼ Common issues of law and fact do, however, predominate on plaintiffs' second theory. This theory posits that defendant systematically misrepresented students' ability to benefit to the government. In reliance on those representations, the government authorized loans to students. In reliance on those loans, students attended CareerCom schools and incurred debt.

Accepting plaintiffs' legal theory, as I must at this stage of the litigation, the first link in the chain of causation presents the issue whether defendant represented to the government that students with artificially low test scores were able to benefit from schoolwork and whether the government authorized student loans based on those representations. Proof of this link will involve only the conduct of defendant and the government. Any single plaintiff would have to present the same proof of that conduct. Therefore, common issues predominate because "the factual and legal questions pre-

sented in this phase will be precisely the same in a class action as they would be in an individual suit." *Bogosian v. Gulf Oil Corporation,* 561 F.2d 434, 453 (3d Cir.1977).

Plaintiffs will have to prove that they did, in fact, have artificially low test scores. Proving each plaintiff's test score will not require extensive proof, but rather can be shown by simple documentary evidence. Therefore, allowing class adjudication of this issue will comply with the Rule, which requires "predominance of common questions, not a unanimity of them." *Sharp v. Coopers & Lybrand,* 70 F.R.D. 544, 547 (E.D.Pa. 1976), *aff'd* 649 F.2d 175 (3d Cir.1981), *cert. denied* 455 U.S. 938, 102 S.Ct. 1427, 71 L.Ed.2d 648 (1982).

Under plaintiffs' legal theory, the second link in the chain of causation raises the issue whether being offered loans induced students to enroll in CareerCom schools. With a properly crafted class, this issue does not implicate the concerns of the Advisory Committee Notes or of *Torres* that fraud cases may require individualized proof of reliance where misrepresentations or degrees of reliance differ. Students must show that they relied on receiving loans, not on defendant's representations. Reliance on student loans is implicit if a plaintiff proves that he or she had no means of attending school without financial assistance. *Cf. Bogosian,* 561 F.2d at 450 ("leverage or coercion is implicit when plaintiff proves the conditioning of sales of one product upon purchase of another"). Reliance is implicit because a factfinder can infer that student loans induced students without other financial means to attend school to enroll in CareerCom schools.

Accordingly, proof of reliance involves predominantly common issues of law and fact. Students may prove their financial inability to afford school through documentary evidence. They may then use expert testimony to develop the inference that a student otherwise unable to afford an education is induced to enroll in school by being offered a student loan. *Cf. Bogosian,* 561 F.2d at 452. Therefore, this element will not require "extraordinarily complex" proof if presented by a class of plaintiffs financially unable to attend school without student loans. *See Eisenberg*

*v. Gagnon,* 766 F.2d 770, 786 (3d Cir.1985). As discussed below, I require further information to determine whether plaintiffs were financially unable to attend school without loans.

At this stage of the litigation, assuming that a valid cause of action has been alleged and that plaintiffs were unable to afford an education without financial assistance, common issues of law and fact predominate on plaintiffs' second theory. Defendant may raise the legal sufficiency of the theory in a motion to dismiss.

### 2. Superiority

The final requirement of Rule 23(b)(3) is that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Courts must consider

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions, (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the class in the particular forum; (D) the difficulties likely to be encountered in the management of a class action. F.R.Civ.Pro. 23(b)(3).

In addition,

> Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant.

*Katz v. Carte Blanche Corporation,* 496 F.2d at 760.

This case is well-suited for class adjudication. Because many class members are financially unable to bring claims separately, there is not a strong interest in allowing individual management of cases. No other litigation is pending and the forum is appropriate as the site of the school and the home of many of the students. Finally, allowing a class action will spare the parties and the court multiple presentations of the same extensive proof of defendant's alleged scheme.

### C. Defining the Class

Plaintiffs seek certification of a class of "all students enrolled at CareerCom's schools in Philadelphia who did not have a high school diploma or G.E.D. when they were enrolled in CareerCom's trade school courses." Complaint ¶ 61. In accordance with this opinion, I expect to certify as a class only those plaintiffs who had no financial means of attending CareerCom schools without student loans. If those plaintiffs are merely a subgroup of the entire putative class, that subgroup must meet the numerosity requirement of Rule 23(a). Plaintiffs should submit a proposed order defining the class to be certified. The submission (1) should include an affidavit verifying that students in the proposed class had no financial ability to afford an education without student loans, and (2) should discuss whether the class to be certified meets the numerosity requirement of Rule 23(a).

For the foregoing reasons, IT IS ORDERED that

1. Plaintiffs shall submit the order required by this opinion by **June 20, 1994.**

2. Defendants shall respond to the submission by **June 27, 1994.**