Tracy BUFORD and Jamil Parker, on behalf of themselves and as class representatives, Plaintiffs,

v.

H & R BLOCK, INC.; H & R Block Tax Services, Inc.; Beneficial National Bank; Mellon Bank (DE); Greenwood Trust; Bank One; Block Financial Corp.; Beneficial Tax Masters, Inc.; Beneficial Finance Service, Inc., Defendants.

Civil Action No. CV495–268.

United States District Court, S.D. Georgia, Savannah Division.

July 11, 1996.

Charles M. Jones, Jones, Osteen, Jones & Arnold, Hinesville, GA, Mark C. Hansen, Jeffrey A. Lamken, Neil M. Gorsuch, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, for Tracy Buford.

Paul Wain Painter, Jr., Painter, Ratterree, Connolly & Bart, Savannah, GA, N. Louise Ellingsworth, Kansas City, MO, for H & R Block Tax Services, Inc., Block Financial Corp., H & R Block, Inc.

Samuel Powel Inglesby, Jr., Amy Lee Copeland, Inglesby, Falligant Horne Courington & Nash, Savannah, GA, Alan S. Kaplinsky, Burt M. Rublin, Walter M. Einhorn, Jr., Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Beneficial National Bank, Beneficial Tax Masters, Inc., Greenwood Trust Co., Beneficial Finance Service, Inc.

Walter Charlton Hartridge, II, Timothy Higgins Edwards, Bouhan, Williams & Levy, Savannah, GA, Thomas Lee Allen, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for Mellon Bank (DE) National Association, as Agent for Service of Mellon Bank.

Nathan Harvey Weitz, Edwin Rothschild Byck, Weiner, Shearouse, Weitz Greenberg & Shawe, Savannah, GA, Jeffery S. Saltz, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, PA, for Bank One.

Charles M. Jones, Jones, Osteen, Jones & Arnold, Hinesville, GA, Mark C. Hansen, Jeffrey A. Lamken, Neil M. Gorsuch, Kellogg, Huber, Hansen, Todd & Evans, Washington, DC, for Robert H. Bacon, April N. Coley, Jamil Parker.

## ORDER

MOORE, District Judge.

In this case, Plaintiffs have sued Defendants under the National Bank Act, 12 U.S.C. §§ 85 and 86, the civil enforcement provision of the Racketeer Influenced Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1964, and the Georgia RICO statute, O.C.G.A. § 16–14–4, alleging that Defendants have engaged in an illegal scheme through the instrumentality of the Block Defendants' Rapid Refund/Refund Anticipation Loan services. Plaintiffs in the above-referenced case have filed a Motion for Class Certification under Federal Rule of Civil Procedure 23(b)(3) or, in the alternative, 23(b)(1), seeking to certify a national class and a Georgia subclass. (Doc. 51). This Court, on May 29, 1996, held a hearing at which counsel for all parties were present. Having read and considered the parties' briefs on this issue, having taken into account the evidence adduced in the pleadings and at the hearing, and having carefully conducted an independent exhaustive inquiry into the present state of the law on this subject, this Court **DENIES** Plaintiffs' Motion for Class Certification as to both the national class and the Georgia subclass.

## FACTS

This case was originally filed in November 1995. Plaintiffs, however, amended their Complaint once as a matter of course and then again by leave of the Court. The Second Amended Complaint was filed March 22, 1996, and the allegations are set forth below.

The Internal Revenue Service, in the mid–1980s, commenced a soon-to-be-popular "electronic filing" program through which taxpayers could file their individual federal income tax returns by computer. (Second Amended Complaint, § 20.) If the electronically filing taxpayer met certain eligibility requirements, he could receive his tax refund check by electronic deposit within two or three weeks rather than the traditional long wait associated with the tax refund season. (*Id.*, ¶¶ 21, 22.) To be eligible for the electronic refund, the taxpayer had to file through a company approved by the IRS as an "electronic filer." (*Id.*, ¶ 23.) The Block Defendants are an "electronic filer" and have become the predominant IRS-approved electronic filer, enjoying a majority share of the electronic filing market in recent years. (*Id.*, ¶ 25.)

Through their position as an electronic filer, the Block Defendants have created a highly profitable service known as the Refund Anticipation Loan (hereinafter "RAL"). (*Id.*, ¶ 27.) The RAL is a high-interest loan that generally lasts only a few weeks. (*Id.*, ¶¶ 20, 27.) The Block Defendants charge approximately $25 to $35 for the electronic filing service. (*Id.*, ¶ 26.) If a taxpayer desires to receive a RAL, then he pays the electronic filing fee, signs a uniform RAL contract, pays a finance charge of up to $89, and then surrenders his right to his refund when it arrives from the IRS. (*Id.*, ¶¶ 28, 30, Attachment "I".) The loan is provided by one of the bank Defendants through an agreement with the Block Defendants and, because of its short duration, the annualized interest ranges between 71% and 833%. (*Id.*, ¶¶ 28, 32, 34.) The bank Defendant secures the loan with the expected proceeds of the taxpayer's tax refund. (*Id.*, ¶ 28.) Plaintiffs allege that, pursuant to written or unwritten agreement, the Block Defendants receive from each Defendants a "kickback" or referral fee for each RAL it processes and refers to that bank Defendant. (*Id.*, ¶ 34.) Plaintiffs further allege that no customer is apprised of this arrangement between the Block and bank Defendants. (*Id.*)

This service arrangement, it appears, has attracted the attention of some state agencies. Plaintiffs allege that the states of Florida, Texas and Connecticut, as well as the New York City Department of Consumer Affairs have initiated enforcement actions against the Block Defendants. (*Id.*, ¶¶ 48, 42–46.) These government actions allegedly were instituted to prevent the Block Defendants from engaging in misleading advertising pertaining to its RAL program. At the certification hearing, counsel for the Block Defendants informed the Court that the Block Defendants have satisfied the state agencies in Florida, Texas and Connecticut and that the enforcement actions are no longer pending in those states; she further advised the Court that the New York City case is still pending but that a motion for preliminary injunctive relief had recently been denied. (Transcript of May 29, 1996, Hearing (hereinafter "TR"), pp. 123–24.) The statuses of these actions has not been considered in the analysis below and the actions are mentioned here only for contextual purposes.

The gravamen of the suit is that the Block Defendants have fraudulently misrepresented the RAL program by referring to it as a Rapid Refund and blurring the lines of the RAL's status as a loan rather than an actual tax refund. (*Id.*, ¶¶ 37, 38.) Plaintiffs contend that this amounts to wire and/or mail fraud and collection of unlawful debts in violation of the federal RICO statute and the Georgia RICO statute as well as in violation of the National Bank Act. (*Id.*, ¶¶ 11–13.)

Pursuant to the Local Rules for the Southern District of Georgia, Plaintiffs have timely moved for certification of a national class and a Georgia subclass. This Court now considers the Motion for Certification.

## ANALYSIS

*I. Class certification overview.*

■ Class actions serve three essential purposes: (1) to facilitate judicial economy by the avoidance of multiple suits on the same subject matter, *American Pipe and Constr. Co. v. Utah*, 414 U.S. 538, 550, 94 S.Ct. 756, 764–65, 38 L.Ed.2d 713 (1974); (2) to provide a feasible means for asserting the rights of those who "would have no realistic day in court if a class action were not avail-

able," *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809, 105 S.Ct. 2965, 2973, 86 L.Ed.2d 628 (1985); and (3) to deter inconsistent results, assuring a uniform, singular determination of rights and liabilities. *First Federal of Michigan v. Barrow,* 878 F.2d 912, 919 (6th Cir.1989). "The class action is a powerful procedural device, offering enormous savings in time and judicial resources while opening up opportunities for both new forms of litigation and potential abuse by litigants." RICHARD L. MARCUS & EDWARD F. SHERMAN, COMPLEX LITIGATION 233 (1985).

■ Class certification is strictly a procedural matter and the merits of the claims at stake are not to be considered when determining the propriety of the class action vehicle. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). "Under Federal Rule of Civil Procedure 23, a class action determination is left to the sound discretion of the district court. The district court's decision is reversible only when it abuses its discretion." *Jaffree v. Wallace,* 705 F.2d 1526, 1536 (11th Cir.1983), *cert. denied,* 466 U.S. 926, 104 S.Ct. 1707, 80 L.Ed.2d 181 (1984); *see also Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981); *Lawler v. Alexander,* 698 F.2d 439, 441 (11th Cir.1983) (holding that district court's certification is not to be disturbed on appeal unless it has abused its discretion or applied impermissible legal standards). In reaching the class certification decision, the district court may consider both the allegations of the complaint and the supplemental evidentiary submissions of the parties. *Blackie v. Barrack,* 524 F.2d 891, 901 n. 17 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976). Doubts regarding the propriety of class certification should be resolved in favor of certification. 4 H. NEWBERG & A. CONTE, NEWBERG ON CLASS ACTIONS § 7540 (3d ed. 1992); *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Brown v. Cameron–Brown Co.,* 92 F.R.D. 32, 49 (E.D.Va.), *rev'd on other grounds,* 652 F.2d

375 (4th Cir.1981). Class certification is conditional only, and if it appears through discovery that certification was improvidently granted, options such as decertification or revised certification are always available to the district court. FED.R.CIV.P. 23(c)(1).

## II. *Class Definition.*

■ Rule 23 governs the certification process. Before considering the requirements of Rule 23, however, a court must determine whether a class exists that can adequately be defined. *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970).[1] Establishing an early definition of the class serves two functions: (1) it enables the court to determine whether the case is suitable for certification of a class; and (2) it "insures that those actually harmed by defendants' wrongful conduct will be recipients of the relief eventually provided." *Simer v. Rios,* 661 F.2d 655, 670 (7th Cir.1981), *cert. denied,* 456 U.S. 917, 102 S.Ct. 1773, 72 L.Ed.2d 177 (1982).

■ It is generally acknowledged that, for a class to exist, it must be capable of ready identification. *DeBremaecker,* 433 F.2d at 734. "Class definition is of critical importance because it identifies the persons (1) entitled to relief, (2) bound by a final judgment, and (3) entitled to notice in a Rule 23(b)(3) action." MANUAL FOR COMPLEX LITIGATION, THIRD § 30.14 (1995). Thus, class definition is an implicit requirement which must be met before a Rule 23 analysis can be undertaken by the district court. *In re A.H. Robins Co.,* 880 F.2d 709, 728 (4th Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989); *Joseph v. General Motors Corp.,* 109 F.R.D. 635, 638 (D.Colo.1986). Whether a class exists is a question of fact for the district court to consider based on the circumstances of the case at bar. *Jagnandan v. Giles,* 379 F.Supp. 1178, 1184 (N.D.Miss.1974), *aff'd* 538 F.2d 1166 (5th Cir. 1976), *cert. denied,* 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977).

---

1. The Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit issued prior to October 1, 1981. *Bonner*

*v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981).

The definition requirement is a slippery one. "Not only is Rule 23 silent as to what constitutes a class, but the courts have not attempted to provide an exact definition of the term." 7A CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1760 (2d ed. 1986). However, the "description of the class must be sufficiently definite to enable the court to determine if a particular individual is a member of the proposed class." *Pottinger v. City of Miami*, 720 F.Supp. 955, 957 (S.D.Fla.1989). While the definition of the class must not be vague or difficult to apply, the implicit definition requirement does not require an overly strict degree of certainty and is to be liberally applied. *Georgia Ass'n of Retarded Citizens v. McDaniel*, 716 F.2d 1565, 1571 n. 3 (11th Cir.1983), *vacated on other grounds*, 468 U.S. 1213, 104 S.Ct. 3581, 82 L.Ed.2d 880 (1984). "The exactitude with which the class must be defined depends in part on the relief which is sought." MARCUS & SHERMAN, COMPLEX LITIGATION 243. Plaintiff has moved for the creation of a national Refund Anticipation Loan Customer Class and for the creation of a Georgia Refund Anticipation Loan Subclass as defined below:

1. All persons in the United States who entered into tax "refund anticipation loan" contracts with the defendants on or after November 22, 1991 (the "RAL Customer Class"); and

2. All persons who are members of the RAL Customer Class and who, on or after November 22, 1990, entered into a tax "refund anticipation loan" contract with defendants in Georgia or were Georgia residents at the time they entered into a tax "refund anticipation loan" contract with defendants (the "Georgia RAL Customer Subclass").[2]

(Pls.['] Mot. for Class Certification, p. 1.)

This Court understands the definitions set forth by Plaintiffs. Further, the record does not reflect any objection to these definitions offered by any Defendant in this case. This Court finds that Plaintiffs have set forth adequate class and subclass definitions such that the class certification determination can now proceed pursuant to Federal Rule of Civil Procedure 23. Therefore, the propriety of the Motion for Class Certification will be considered on the bases of these class definitions. *Jenson v. Continental Fin. Corp.*, 404 F.Supp. 806, 809 (D.Minn.1975).

### III. *Rule 23(a) requirements.*

Before a class can be certified through one of the provisions of Rule 23(b), it must first satisfy several prerequisites:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representatives parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED.R.CIV.P. 23(a).

Rule 23(a) acts as a lens through which the Court looks to ensure that the interests and claims of the representative plaintiff matches those of the putative class. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982); *General Telephone Co. of Northwest v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). The duty of the Court is to encompass and enforce the understanding that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (quoting *Schlesinger v.*

---

**2.** The one-year difference between the class periods for the national class and the Georgia subclass is caused by the four-year period of limitation implicit within the federal RICO statute and the five-year statute of limitation expressly provided for in the Georgia RICO statute. *See* 18 U.S.C. § 1964; *Agency Holding Corp. v. Malley-*

*Duff & Associates*, 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987) (holding that federal civil RICO enforcement actions should be subject to a uniform four-year statute of limitations borrowed from the most analogous statute, the Clayton Act, 15 U.S.C. § 15b); O.C.G.A. § 16-14-8.

*Reservists Committee to Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2930, 41 L.Ed.2d 706 (1974)). In essence, these requirements ensure that each putative class member's right of access to the courts is being asserted through a proxy having similar goals and interests.

In this case, Plaintiffs, as class representatives, bear the burden of proving that all four prerequisites of Rule 23(a) are met; failure to establish any one requirement will completely defeat the certification effort. *Haywood v. Barnes,* 109 F.R.D. 568, 575 (E.D.N.C.1986). The Court, meanwhile, must undertake a "rigorous analysis" to ensure that the Rule 23(a) requirements have been met. *Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372–73.

A. *Impracticability of Joinder: Rule 23(a)(1).*

Rule 23(a)(1) requires that the class be so large that joinder is impracticable. "Practicability of joinder depends on many factors, including for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir. 1986). The size of individual claims is another factor courts consider under Rule 23(a)(1). Where individual claims are so small as to inhibit an individual from pursuing his own claim, joinder is less likely. *Luyando v. Bowen,* 124 F.R.D. 52, 55 (S.D.N.Y.1989); *Haywood,* 109 F.R.D. at 577.

When a class is extremely large, the numbers alone may presume impracticability of joinder. *Finnan v. L.F. Rothschild & Co., Inc.,* 726 F.Supp. 460, 465 (S.D.N.Y. 1989); *Riordan v. Smith Barney,* 113 F.R.D. 60, 62 (N.D.Ill.1986). Rule 23(a)(1) incorporates no bright-line test for determining numerosity. This determination rests on the court's practical judgment in light of the particular facts of the case. *Deutschman v. Beneficial Corp.,* 132 F.R.D. 359, 371 (D.Del. 1990). The class representative is not required to establish the exact number in the proposed class. *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir. 1983); *Tolbert v. Western Elec. Co.,* 56 F.R.D. 108, 113 (N.D.Ga.1972). An unsubstantiated allegation as to numerosity, however, is insufficient to satisfy Rule 23(a)(1). *Zeidman v. J. Ray McDermott & Co.,* 651 F.2d 1030, 1038 (5th Cir.1981).

In this case, Plaintiffs have estimated that the purported national class is comprised of five million members while Defendants have estimated that the class contains closer to ten million members. (*TR,* pp. 143–45.) The parties achieved those estimations by examining the number of the RALs generated in 1994 and then performing a loose extrapolation for the remainder of the years. (*TR,* p. 144.) The Court finds that the representations made by the parties are reasonable. As a result, this class size is sufficient to satisfy the numerosity requirement of Rule 23(a)(1) and, indeed, Defendants have conceded that Plaintiffs have met that requirement.[3] (*TR,* p. 155.) This Court concludes that the national class size likely amounts to several million RAL customers. Furthermore, the Georgia subclass size includes several hundred thousand RAL customers. (*TR,* p. 146.) Clearly, it would be impracticable to join all these class and subclass members. Rule 23(a)(1) has been satisfied as to the national RAL class and the Georgia RAL subclass.

B. *Common questions of law or fact: Rule 23(a)(2).*

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." An academic dispute exists as to whether more than one common question is necessary. Some courts' readings of the language of Rule 23(a)(2) indicate that more than one common question must be present. *Stewart v. Winter,* 669 F.2d 328, 335 n. 16 (5th Cir.1982); *Sanders v. Robinson Humphrey/American Express, Inc.,* 634 F.Supp. 1048, 1056 (N.D.Ga.1986), *aff'd in part, rev'd in part on other grounds sub nom. Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718 (11th Cir.1987), *cert. denied,* 485 U.S. 959,

---

3. Defendants have not conceded the satisfaction of any other requirement found in Rule 23.

108 S.Ct. 1220, 99 L.Ed.2d 421 (1988). Other courts, though, have clearly concluded that a single common question is sufficient. *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 622 (N.D.Ill.1989); *Haywood*, 109 F.R.D. at 579. The most respected authorities adhere to this reading of Rule 23(a)(2). 1 NEWBERG ON CLASS ACTIONS § 3.10; ARTHUR R. MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS: PAST, PRESENT AND FUTURE 12 (1977). This District follows the *one* common question requirement: "Common questions need not be important nor controlling. In fact, one significant common question of law or fact will satisfy this requirement." *Georgia State Conference of Branches of NAACP v. Georgia*, 99 F.R.D. 16, 25 (S.D.Ga.1983).

▆▆▆ "Rule 23(a)(2) is relatively easy to satisfy. Therefore it is not surprising that very, very few cases have been dismissed for failing to meet the common question requirement." MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS 25. It is clear that the common question may be either of law or of fact. *Georgia NAACP*, 99 F.R.D. at 25; *Ashe v. Board of Elections in the City of New York*, 124 F.R.D. 45, 48 (E.D.N.Y.1989). Further, "minor differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *Luyando*, 124 F.R.D. at 55. There is no requirement of complete identity of legal claims among class members, *Johnson v. American Credit Co. of Georgia*, 581 F.2d 526, 532 (5th Cir.1978), and the "threshold of 'commonality' is not high." *Jenkins v. Raymark Industries*, 782 F.2d 468, 472 (5th Cir.1986). Unlike the "predominance" requirement of Rule 23(b)(3), Rule 23(a)(2) requires only that the class movant show that a common question of law or fact *exists;* the movant need not show, at this stage, that the common question *overwhelms* the individual questions of law or fact which may be present within the class. *Ventura v. New York City Health & Hosps. Corp.*, 125 F.R.D. 595, 600 (S.D.N.Y.1989); *Ashe*, 124 F.R.D. at 48–49. Indeed, Rule 23(a)(2) "does not say that the common questions need be important or controlling." MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS 24.

▆▆▆ In this case, Plaintiffs have demonstrated that common issues abound. Primarily, Plaintiffs argue that "proof of a scheme to deceive persons of ordinary prudence ... will be common to all class members." (Pls.['] Reply Brief, p. 3.) Additional common questions include, but are not limited to: "[w]hether Block owes plaintiffs a fiduciary duty as their tax preparer;" "[w]hether defendants acted with an intent to defraud customers by inducing them to confuse RALs with rapid refunds;" "[w]hether the interest rate defendants have collected on RALs constitutes the collection of unlawful debts;" and "[w]hether defendants have conspired to engage in a pattern of racketeering activity or to collect unlawful debts[.]" (Pls.['] Br., p. 18.)

In their brief, Defendants have not expressly contested the satisfaction of Rule 23(a)(2). Instead, they appear to engage in a Rule 23(b)(3)–based attack, focusing on the argument that individualized issues predominate over any common questions. While Defendants stated at the class certification hearing that they conceded only the numerosity issue, no real contest was asserted as to the commonality requirement of Rule 23(a)(2)—either in their brief opposing certification or in their presentation at the class certification hearing.

▆▆▆ In RICO cases, commonality is frequently satisfied. An alleged scheme to defraud which affects a class of people is a common question of law and/or fact, regardless of the characteristics of the scheme's intended victims. *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 674–75 (N.D.Ill.1989); *Longden v. Sunderman*, 123 F.R.D. 547, 553 (N.D.Tex.1988). "[E]ven though individual factual circumstances may be present among class members, the commonality requirement is satisfied where it is alleged that the defendants have acted in a uniform manner with respect to the class." *International Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 462 (N.D.Cal.1983) (citing *Alliance to End Repression v. Rochford* 565 F.2d 975, 979 (7th Cir.1977); *Midwest Community Council, Inc. v. Chicago Park District*, 87 F.R.D. 457, 462 (N.D.Ill.1980)).

Plaintiffs have alleged that Defendants acted in a uniform and concerted effort to defraud the class through the Rapid Refund/Refund Anticipation Loan artifice. At this point, it is not the role of this Court to determine whether there is any legal validity to Plaintiff's claims. *Eisen,* 417 U.S. at 177, 94 S.Ct. at 2152. The Court may, however, examine the allegations of the Second Amended Complaint and the other evidence before it to ensure that the cause of action falls within any of Rule 23's procedural requirements. *Blackie,* 524 F.2d at 901. Upon reviewing the pleadings filed and the evidence adduced thus far, this Court finds that, as a procedural matter, common questions pervade throughout the class regarding, *inter alia,* the existence of the allegedly illegal scheme and the alleged conspiracy to promote and execute the goals of that scheme. These issues are not simply convenient or collateral common issues. Rather, they are central to the case and their centrality and commonality support the policy objectives behind class certification. *Stott v. Haworth,* 916 F.2d 134, 145 (4th Cir.1990); *Martin v. Dahlberg, Inc.,* 156 F.R.D. 207, 214 (N.D.Cal. 1994). Quite clearly, Plaintiffs have satisfied the commonality requirement embodied in Rule 23(a)(2) for both the national class and the Georgia subclass.

### C. *Typicality of claims: Rule 23(a)(3).*

The typicality requirement of Rule 23(a)(3) has been observed to be a redundant criterion and some courts have expressed doubt as to its utility. *See Sanders,* 634 F.Supp. at 1056 n. 10. While some courts consider typicality synonymous with the commonality requirement, other courts equate typicality with adequacy of representation. *Alfus v. Pyramid Technology Corp.,* 764 F.Supp. 598, 606 (N.D.Cal.1991).

 This Circuit's understanding of the role of Rule 23(a)(3) is as follows:

Although the considerations of subsections a(2), a(3), and a(4) tend to overlap, *see De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225 (7th Cir.1983); 7 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1764 (1972), "subsection a(3) primarily directs the district court to focus on whether named representatives' claims have the same essential characteristics as the claims of the class at large." 713 F.2d at 232. Moreover, "[t]he typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members." *Id.; see also Penn v. San Juan Hospital, Inc.,* 528 F.2d 1181, 1189 (10th Cir.1975). Thus, courts have found that a strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences.

*Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985) (concluding string cite omitted). "In other words, there must be a nexus between the class representative's claims or defenses and the common questions of fact or law which unite the class." *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984), *cert. denied,* 470 U.S. 1004, 105 S.Ct. 1357, 84 L.Ed.2d 379 (1985). Essentially, the class representative's claim is typical of the claims of the class if his claim and those of the class "arise from the same event or pattern or practice and are based on the same legal theory." *Id.; see also Sanders,* 634 F.Supp. at 1056.

 "The requirement is that Plaintiff and each member of the represented group have an interest in prevailing on similar legal claims. Assuming such interest, particular factual differences, differences in the amount of damages claimed, or even the availability of certain defenses against a class representative may not render his or her claims atypical." *Meyer v. Citizens and Southern Nat'l Bank,* 106 F.R.D. 356, 361 (M.D.Ga.1985) (citing *Zeffiro v. First Pennsylvania Banking & Trust Co.,* 96 F.R.D. 567, 569 (E.D.Pa. 1983)). In light of the law stated above, this Court is of the opinion that the typicality threshold is a low one, *Shipes v. Trinity Indus.,* 987 F.2d 311, 316 (5th Cir.), *cert. denied,* 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993), and that the Rule 23(a)(3) criterion serves one simple purpose: "to assure that the named representatives' interests are aligned with those of the class." *International Molders',* 102 F.R.D. at 463 (citing *Wilcox Dev. Co. v. First Interstate*

Bank of Oregon, N.A., 97 F.R.D. 440, 443–44 (D.Or.1983)).

In their brief opposing certification, Defendants illuminate what they purport to be individualized issues which they purport are of such a magnitude that they overwhelm the common issues and, thus, are fatal to certification under Rule 23(b)(3): "All these factual differences suggest that individual issues will predominate in this litigation and consequently the requirements of Rule 23(b)(3) are not satisfied. Some of these factual differences, however, are of such a nature that they render the putative class representatives' claims atypical under Rule 23(a)(3)...." (Defs.['] Br., p. 26.)

This Court takes note of Defendants' concerns regarding individualized issues but believes that those concerns are better addressed under the predominance requirement of Rule 23(b)(3). So long as the Plaintiffs and the class have an interest in prevailing in similar legal claims, then the typicality requirement is satisfied. *Meyer*, 106 F.R.D. at 361. In this case, the class members and the class representatives assert the same legal theory against Defendants. Defendants have insisted that certain defenses may be available against these Plaintiffs that may not be available against other class members. This, however, does not preclude a finding of typicality because the requirement does not demand factual homogeneity. *International Molders'*, 102 F.R.D. at 463. All that is required is that the class representatives' and the class members' claims "be similar enough to conclude that the claims of the absent members will be fully presented." *Sommers v. Abraham Lincoln Fed. Sav. & Loan Assoc.*, 66 F.R.D. 581, 587 (E.D.Pa.1975). Defendants have made no argument that the legal theories and basic claims differ among the class representatives and the class members. "Since all plaintiffs must establish the same basic elements to prevail and since there are no differences as to the type of relief sought or the theories of liabilities upon which plaintiffs are proceeding, the typicality requirement is met." *Davis v. Northside Realty Assocs., Inc.*, 95 F.R.D. 39, 43 (N.D.Ga.1982). In this case, this Court is confident that the class representatives' interests are aligned with those of the class. Rule 23(a)(3) has been satisfied by the national RAL class representatives and the Georgia RAL subclass representative.

D. *Adequacy of representation: Rule 23(a)(4).*

"The binding effect of all class action decrees raises substantial due process questions that are directly relevant to Rule 23(a)(4)," one authority observes. 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1765. "If the absent members are to be conclusively bound by the result of an action prosecuted or defended by a party alleged to represent their interests, basic notions of fairness and justice demand that the representation they receive be adequate." *Id.; see also Hansberry v. Lee*, 311 U.S. 32, 41, 61 S.Ct. 115, 117–18, 85 L.Ed. 22 (1940). Rule 23(a)(4) requires the movant to show that "the representative parties will fairly and adequately protect the interest of the class." On its face, this adequacy requirement suggests some interplay with the commonality and typicality requirements. *See Wynn v. Dixieland Food Stores, Inc.*, 125 F.R.D. 696, 700 (M.D.Ala.1989). Courts traditionally hold that, in order to satisfy this requirement, it is necessary to determine: (1) that the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit, and; (2) that the interest of the class representative is not antagonistic to or in conflict with other members of the class. *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985); *Meyer*, 106 F.R.D. at 361.

Regarding the attorney-competence prong, the "adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation...." *Griffin*, 755 F.2d at 1533. The class attorney serves in "something of a position of public trust." *Piambino v. Bailey*, 757 F.2d 1112, 1144 (11th Cir.1985), *cert. denied*, 476 U.S. 1169, 106 S.Ct. 2889, 90 L.Ed.2d 976 (1986). The class attorney has a fiduciary duty to the court as well as to each

member of the class. *In re "Agent Orange" Prod. Liab. Litig.,* 800 F.2d 14, 18 (2d Cir. 1986). Therefore, the class attorney is held to a very high standard of care during all phases of the litigation. *Piambino,* 757 F.2d at 1144.

▇▇▇ Defendants have raised no question as to whether Plaintiffs' counsel are adequate to represent the interests of the class members. This Court observes that attorneys Mark C. Hansen of Washington, D.C., and Charles M. Jones of Hinesville, Georgia, and their respective firms have, to this point, done an excellent job in asserting the claims and interests of the named Plaintiffs and the putative class. While neither Attorney Hansen nor Attorney Jones has been lead counsel in any previous class action,[4] both men have developed strong records in handling complex litigation in the federal courts. To this point, counsel for Plaintiffs have demonstrated their proficiency and professionalism. They have submitted excellent briefs on the Motion for Class Certification as well as on the pending Motions to Dismiss filed by the several Defendants. This Court is satisfied that neither Attorney Hansen nor Attorney Jones would leave any stone unturned were this case to proceed as a class action. "The vigorous prosecution test is generally satisfied upon the court's determination that the plaintiff's attorney is professionally competent to conduct the particular litigation." *Brown,* 92 F.R.D. at 40. This Court finds that Attorney Hansen and Attorney Jones are professionally competent to handle this litigation and, therefore, the attorney-competence criterion is met.

▇▇▇ Regarding the adequacy requirement, Defendants have mainly focused on the ability, *vel non,* of the class representatives to pay for the costs of conducting the complex litigation. Courts normally do not ex-amine the finances of class representatives. *Sanderson v. Winner,* 507 F.2d 477, 479–80 (10th Cir.1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975). Some courts, though, have permitted limited inquiry into the representatives' finances. *Pension Benefit Guar. Corp. v. LTV Corp.,* 122 F.R.D. 436, 440 (S.D.N.Y.1988); *Tedesco v. Mishkin,* 689 F.Supp. 1327, 1336 (S.D.N.Y. 1988); *Michaels v. Ambassador Group, Inc.,* 110 F.R.D. 84, 90–91 (E.D.N.Y.1986). In a Rule 23(b)(3) suit such as this, courts have allowed such inquiries because of the *Eisen* decision which makes the class representative responsible for paying costs of notice. 417 U.S. at 177, 179, 94 S.Ct. at 2152, 2153. It is, however, common practice for the class attorneys to advance such costs with recovery of the expenses dependent upon the outcome of the case. *Rand v. Monsanto Co.,* 926 F.2d 596, 599 (7th Cir.1991).

In this case, the Court permitted Defendants to engage in a very limited inquiry regarding payment of costs associated with the class litigation: "Defendants may query the four putative class representatives regarding whether they have made provisions with class counsel for the payment of the costs of maintaining this action; any such question will require only a 'yes' or 'no' answer and further inquiries into the specifics of such an agreement, if one exists, are inappropriate."[5] (March 22, 1996, Order, p. 2.) In her deposition, Plaintiff Buford answered that her counsel had agreed to pay the costs associated with pursuing the class action and that that agreement had been reduced to writing. (April 17, 1996, Depo. of Tracy M. Buford, p. 62.) Plaintiff Parker also testified that she had reached the same written agreement with counsel. (April 17, 1996, Depo. of Jamil F. Parker, pp. 30–32.)

Knowing that an agreement had been reached between Plaintiffs and their counsel,

---

**4.** Attorney Hansen is currently co-lead counsel in another putative class action and has represented defendants in class actions; Attorney Jones had a tangential connection with a different class action handled by his partner, Billy Jones. (*TR* 141–43.)

**5.** The Second Amended Complaint upon which this case is based originally listed two other Plaintiffs in addition to Plaintiff Buford and Plaintiff Parker. Robert H. Bacon and April N. Coley were dismissed as class representatives, however, after they failed to attend the class certification hearing despite a valid subpoena commanding their appearance and after this Court denied their Motion to Quash Subpoena.

this Court engaged in the following colloquy with Attorney Hansen:

> THE COURT: So I have to deal with the question, are you prepared, if we're talking about five to ten million people, and if the Court says the minimum that I would accept would be a bulk-rate mailing, are the plaintiffs prepared, and can the plaintiffs tell me at this time to the Court, we are prepared, we're willing, and we have the wherewithal to undertake that expense in this case?
>
> MR. HANSEN: Your Honor, we are prepared to do that. We'd like the Court to keep an open mind about the ways to accomplish it, but we are prepared—
>
> THE COURT: Well, I've told you what my mindset is. The reason I told you that is, don't come back to me and say, well, we want you to keep an open mind. I'm saying, here's where my mindset is, now. And I'm not talking about newspaper advertisements, I'm not talking about putting the burden on the defendants. I'm talking about saying, you know, at the minimum, a bulk-rate mailing to all these people, and are you verifying to this Court as you stand there now, Judge, if you give us what we want, we're going to undertake that expense and we're going to be responsible for that expense, and we have the wherewithal to foot the bill for that?
>
> MR. HANSEN: I understand the Court's question, and I believe we are prepared to make that representation. We do have the wherewithal, and we're prepared to do whatever the Court directs us to do in that regard.
>
> THE COURT: All right, sir.

(*TR*, pp. 148–49.)

After viewing the evidence on this matter, this Court is convinced that Plaintiffs have properly made arrangements with their counsel for their counsel to pay for the large costs associated with a class proceeding such as this one. Furthermore, this Court accepts Attorney Hansen's representation that his and/or Attorney Jones' firms have the financial means to underwrite the expenses of the litigation. Accordingly, this Court will not declare that the adequacy requirement has not been met for lack of sufficient resources.

Under the adequacy prong, courts have consistently held that the class representative should have a working knowledge of the case. *Chevalier v. Baird Sav. Ass'n*, 72 F.R.D. 140, 146–47 (E.D.Pa.1976). This requirement is imposed to avoid vesting unbridled discretion in the class attorney and effectively anointing the class attorney as the class representative. *Weisman v. Darneille*, 78 F.R.D. 669, 671 (S.D.N.Y.1978). It is, however, unrealistic to expect the class representative to possess either a considerable amount of legal knowledge or a seamless knowledge of the facts of the case. *In re Crazy Eddie Sec. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y.1991). Therefore, many courts have begun to hold that the knowledge of the class representative is of minimal importance in highly complex matters such as the case at hand. *In re Workers' Compensation*, 130 F.R.D. 99, 108 (D.Minn.1990); *Lerner v. Haimsohn*, 126 F.R.D. 64, 67 (D.Colo.1989). This Court follows those courts which hold that an adequate representative must have some minimal degree of participation and knowledge of the action. *See, e.g., Darvin v. International Harvester Co.*, 610 F.Supp. 255, 256 (S.D.N.Y.1985) (finding class representative inadequate because he "demonstrated a serious lack of familiarity with the suit"); *Greenspan v. Brassler*, 78 F.R.D. 130, 133–34 (S.D.N.Y.1978) (holding that class representative was inadequate when his testimony revealed that he was "startlingly unfamiliar" with the case). If plaintiff has "extremely limited or nonexistent" knowledge of the facts, then he is an inadequate class representative. *Darvin*, 610 F.Supp. at 257.

This Court has reviewed the transcript of the certification hearing testimony of Plaintiffs Buford and Parker and determines that they are sufficiently familiar with the case such that their adequacy cannot be impeached. Plaintiff Parker expressed a sound knowledge of the underlying facts of the case and it did not appear to the Court that she was merely at the class certification hearing as a figurehead through which class counsel was speaking. Furthermore, she expressed an understanding of her role as a class representative: "My duties as a role in

the class-action suit is to finally stand up for the small people that do get taken advantage of because they do not have the proper education that completely makes them knowledgeable to a situation." (Parker depo., p. 24.) She also understood that she would be required to be an active participant in the litigation. When Counsel for the Block Defendants asked her if she knew what she had to do as a class representative, Plaintiff Parker responded: "Do what I'm doing today by making and giving depositions, making myself available at my counselor's request for trials, court dates, and any of the necessary things." (Parker depo., p. 25.)

Plaintiff Buford also demonstrated sufficient knowledge of the underlying facts as well as a familiarity with the requirements of her class representative status. Counsel for the Beneficial Defendants engaged her in the following discussion:

Q: Let's get back to the class action. You understand that you're representing other people in this class action?

A: Yes.

Q: Okay. Do you know how that works?

A: Yes.

Q: Can you explain it to me?

A: Yes. Instead of having millions of people come into the Court and explain what's going on, they just—it's just like one or two people or three or four coming and speaking for everybody that's had the same thing happen to them.

Q: And what do you understand your responsibilities to be as a class representative?

A: I am speaking for all the other people that have had the same thing happen to them what has happened to me.

Q: And what is it—

A: I am their voice.

Q: And what is it you have to do that they don't have to do?

A: They don't have to sit here and talk for three hours and stuff like that, or four.

Q: Any other things that you think you have to do as a class representative, other than give a deposition?

A: Well, it depends on how things work out, whether the Judge says this is, you know, what we're doing here today is okay or not, I may have to go to a trial.

(Buford depo., pp. 55–56.)

This Court is impressed that Plaintiffs Buford and Parker are adequately familiar with the facts of the case and what will be expected of them in their role as class representative. While Plaintiffs may not be able to thoroughly define the legal instruments through which they seeks relief, one court has suggested that, in a RICO case, the Court should expect some unfamiliarity as to the legal claims: "[W]hile [Plaintiff] is not a lawyer, she seems to have a good understanding of the process and to be smart enough to know what she doesn't know." *Heastie*, 125 F.R.D. at 677. The court commented, "It would be particularly inappropriate to require too much sophistication in a case like this, since [Plaintiff] argues that [Defendant] targeted these consumers partly *because* they were unsophisticated." *Id.* (emphasis in original).

██ This Court finds that Plaintiffs Buford and Parker are adequate national class representatives and, therefore, the requirement contained in Rule 23(a)(4) is met as to the national class. In so ruling, it is observed that this Circuit has recognized that the question of adequacy is a perpetuating factor for the Court to consider and reconsider throughout the course of the proceedings. *Gonzales v. Cassidy*, 474 F.2d 67, 72 (5th Cir.1973). Indeed, before a class settlement may be approved, the district court must evaluate the overall adequacy of representation to determine whether the due process interests of the class members were protected throughout the prosecution of the action. *Id.*

██ This Court is not convinced, however, that Plaintiff Buford is an adequate representative of the Georgia subclass. The evidence before the Court shows that Plaintiff Buford obtained RALs while stationed on an army base in Missouri. Though this Court observes that, legally, Plaintiff Buford may have maintained her status as a Georgia resident, *see* 50 U.S.C.App. § 574, and there-

fore fits within the proposed subclass definition, the fact that she in fact obtained her RALs while in the state of Missouri renders her claim liable to a unique defense: the question of whether a Georgia statute can have extraterritorial effect to control commercial activities beyond its borders. *See Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336, 109 S.Ct. 2491, 2499, 105 L.Ed.2d 275 (1989); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161, 34 S.Ct. 879, 881–82, 58 L.Ed. 1259 (1914). This Court will not tether the fate of the Georgia subclass to this precarious legal position of Plaintiff Buford; the Motion for Class Certification of the Georgia subclass is denied on the grounds that Plaintiff Buford is an inadequate class representative.

Having determined that the four requirements of Rule 23(a) have been met for the national class, this Court now looks to Rule 23(b) to determine whether that class should be certified.

## IV. *Rule 23(b)(3) requirements.*

The class must be categorized under one of the three class types set out in Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3) or, in the alternative, Rule 23(b)(1). At the class certification hearing, this Court informed the parties that it did not perceive this class as a Rule 23(b)(1) class but rather as a Rule 23(b)(3) class. (*TR*, p. 4.) This Court remains convinced that, if a class is to be certified in this money damages action, it is to be certified under Rule 23(b)(3) in which questions of law or fact common to the members of the class predominate over questions affecting only individual class members. *See In re Dennis Greenman Sec. Litig.*, 829 F.2d 1539, 1545–46 (11th Cir.1987).

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." FED.R.CIV.P. 23 advisory committee's notes. Under Rule 23(b)(3), when the prerequisites of Rule 23(a) are satisfied, a class may be certified if

the court finds that the questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, and that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED.R.CIV.P. 23(b)(3) (emphases added). The predominance and superiority requirements are not required under subsections (b)(1) or (b)(2); the extra criteria within subsection (b)(3) "reflect the fact that special caution must be exercised in class actions of this type because of the loose affiliation among the class members, which is thought to magnify the risks inherent in any representative action." 7A FEDERAL PRACTICE AND PROCEDURE § 1777.

"Although easy to state, these prerequisites become rather opaque when an attempt is made to apply them." MILLER, AN OVERVIEW OF FEDERAL CLASS ACTIONS 48. It is true that the rule itself gives the thinnest margins of guidance and the advisory committee's notes do not adequately serve to corral the deliberative processes of the various district courts onto a common path. "The truth is that if one reads fifty or even a hundred cases involving predominance and superiority, a clear picture of what is happening under Rule 23(b)(3) does not emerge. A DaVinci or Michaelangelo could not draw a straight line through the subdivision (b)(3) cases." *Id.* Often, the predominance and superiority criteria blend together and present the same issues for resolution. 1 NEWBERG ON CLASS ACTIONS § 4.25; *see, e.g., Goldwater v. Alston & Bird*, 116 F.R.D. 342, 355–56 (S.D.Ill.1987). This is no less true in this case. Many times, what is discussed in the predominance section of this analysis could well be discussed in the superiority

section. This Court has, however, divided the two criteria for purposes of clarity only and is not attempting to engage in a pedagogical endeavor to strictly bifurcate the Rule 23(b)(3) considerations.

## A. *Predominance.*

■ The predominance issue focuses on the number and significance of common, as opposed to individual, issues. However, "the predominance requirement is not a numerical test that identifies every issue in the suit as suitable for either common or individual treatment and determines whether common questions predominate by examining the resulting balance on the scale." 1 NEWBERG ON CLASS ACTIONS § 4.25. The district court must engage in a qualitative rather than quantitative analysis to ascertain whether the predominance requirement has been satisfied. *Id.* "A single common issue may be the overriding one in litigation, despite the fact that the suit also entails numerous remaining individual questions." *Id.* This Circuit has chosen to follow the mainstream approach by stressing that, though common issues must predominate, they do not need to be homogeneous throughout the class. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir.1987), *cert. denied*, 485 U.S. 959, 108 S.Ct. 1221, 99 L.Ed.2d 421 (1988).

■ Defendants have argued that there are many individualized issues which are of such a magnitude that the common issues cannot be fairly said to predominate. These issues include: whether the class members knew they were obtaining loans instead of a direct tax refund; whether the class members read the loan documents; whether the class members would have accepted the Defendants' services even if they had known it was a loan; what, if any, advertisements of the Block Defendants were the class members exposed to; and, whether employees of the Block Defendants utilized a uniform sales pitch to the class members. (Defs.['] Br., pp. 12–17.) This Court believes that Defendants' approach essentially boils down to the issue of whether individual questions of the class members' reliance on the alleged acts of fraud will so pervade the action that the predominance criterion cannot be satisfied.

Indeed, the greatest expense of effort from both sides in this action has been directed at the fraud/reliance issue and this Court has not ignored these efforts. This Court has read and considered over one hundred cases demonstrating how other federal courts have chosen to handle this issue and not one of those cases was on point.

■ Defendants have pointed to the Eleventh Circuit's decision in *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir.), *cert. denied*, 502 U.S. 855, 112 S.Ct. 167, 116 L.Ed.2d 131 (1991). There, the Eleventh Circuit panel held that, under the civil enforcement provision of RICO, "when the alleged predicate act is mail or wire fraud, the plaintiff must have been a target of the scheme to defraud and must have relied to his detriment on misrepresentations made in furtherance of that scheme." *Id.* at 1499–1500. Some courts have taken the position that acceding to a defendant's argument regarding individualized proof of a legal issue is an impermissible look into the merits in violation of *Eisen. See, e.g., In re Independent Gasoline Antitrust Litig.*, 79 F.R.D. 552, 561 (D.Md.1978). Other courts, however, hold that consideration of the defendants' arguments pertaining to individualized proof of an issue is not a prohibited examination of the merits of the case. *See, e.g., McClendon v. Continental Group*, 113 F.R.D. 39, 44 (D.N.J.1986). This Court believes that the Rule 23(b)(3) predominance standard requires a district court to examine questions of individualized proof while referencing the elements of the cause of action. *See Genden v. Merrill Lynch, Pierce, Fenner & Smith*, 114 F.R.D. 48, 51 (S.D.N.Y.1987). This is merely a question of procedure and not a substantive determination.

Plaintiffs have performed a thorough exploration of the extant case law and have pointed to no less than three cases which merit the serious attention of this Court. These three cases demonstrate that, in certain situations involving class action suits for fraud, any individual issues of reliance would not defeat a finding of predominance of the common issues. Examination of these three cases reveals, however, distinctions which are

fatal to Plaintiffs' argument in the instant case.

In *Heastie v. Community Bank of Greater Peoria*, Judge Aspen of the Northern District of Illinois certified a class of consumers who alleged certain illegal acts of fraudulent behavior were perpetrated upon them by the defendants. 125 F.R.D. at 671, 680. The class representative averred that she had entered into " 'a tacit agreement' " with a satellite dish contractor through which the contractor was to find financing for the customer at an agreed-upon rate. *Id.* at 672. The contractor then steered its customers to the bank defendant which then created a loan for the consumer with financing terms less favorable than those originally contracted for. *Id.* The class complaint asserted that the bank's " 'bait and switch' " scheme amounted to mail fraud and violated the federal RICO statute as well as the Illinois Consumer Fraud Act. *Id.* The *Heastie* court certified a class composed of thousands of individuals meeting the following criteria:

> (a) they signed a contract with a provider of goods and services; (b) the provider of goods and services referred them to Community Bank; (c) they signed a loan agreement with Community Bank, the proceeds of which were used to pay for the goods or services; and (d) the terms of the loan agreement with Community Bank were less favorable to the borrower than those of the original contract.

*Id.* at 680.[6]

In so ruling, the court looked at the six factors of the RICO statute, 18 U.S.C. § 1962,[7] and also at the mail fraud statute, 18 U.S.C. § 1341, and found that class treatment was appropriate for the determination of the existence of the scheme to defraud:

> Community Bank seems to suggest that the determination of a scheme to defraud will depend on facts involving the individual class members, but we disagree. By the terms of the mail fraud statute, what is important is devising or intending to devise a scheme to defraud, and that depends only on the defendant. Thus, a scheme to defraud will violate the statute even if it never succeeds. *See, e.g., Ward v. United States,* 845 F.2d 1459, 1462 (7th Cir.1988). It follows that a scheme to defraud will violate the statute, no matter the characteristics of the scheme's intended victims. We conclude, therefore, that the existence of racketeering is a common question of law and fact.

*Id.* at 674. Having found this and other common issues, the court then had to ascertain whether the common issues predominated over the individualized questions. *Id.* While the court noted that, even if the class could show that the defendants violated RICO, there still existed individual questions of causation and damages. *Id.* It stated: "Nonetheless, 'a class action will not be defeated solely because of some factual variations among class members' grievances.' " *Id.* (quoting *Patterson v. General Motors Corp.,* 631 F.2d 476, 481 (7th Cir.1980), *cert. denied,* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981)).

The *Heastie* court then looked at how courts had effectively dealt with handling individual questions and concluded: "The necessity of answering individual questions after answering common questions will not prevent a class action." *Id.* (citations omitted). The court certified the class. *Id.* at 680.

The second case examined is *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665 (D.Kan.1989). In that RICO class action involving alleged fraudulent misrepresentations of salesmen's compensation plans, the Court rejected Defendant's argument that individual issues regarding the misrepresentations and reliance thereon would predominate and, therefore, preclude certification.

---

**6.** The court also certified another class including those individuals who had taken a loan through the bank defendant after referral by the contractor and who had signed a certain exculpatory document which purported to relieve the bank of any liability for the work of the contractor. *Heastie,* 125 F.R.D. at 680.

**7.** 18 U.S.C. § 1962(b) provides: "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

*Id.* at 678. The *MCI* court found that there was uniformity of written misrepresentation and the alleged isolated incidents of oral misrepresentation did not defeat a finding of predominance:

> [T]he basic misrepresentation giving rise to the fraud claim is uniform (although different plans were in effect at different times, all salespersons were subject to the same alleged misrepresentation: that they would be compensated under the terms of the plan then in effect) and written. The issue of misrepresentation therefore presents a common, rather than an individualized, question.

*Id.* (citations omitted).

Having found that the issue of misrepresentation was common to members of the class, the court ruled that the question of reliance did not defeat satisfaction of the predominance criterion. *Id.* at 679. There, the fact that the employees had agreed to employment by the defendant demonstrated that the employees had relied upon the allegedly fraudulent compensation promises: "It is implausible that, in initiating or continuing their employment with MCI, the salespersons did not rely on the commissions plans which they were required to sign." *Id.* That being so, the question of the reasonableness of the class members' reliance was an "objective inquiry common to the entire proposed class." *Id.*

Likewise, in *Fogie v. Rent-A-Center, Inc.,* the district court certified a class asserting RICO mail/wire fraud claims in which the plaintiffs claimed that certain rent-to-own contracts had overvalued the goods to be acquired and failed to make material disclosures. 867 F.Supp. 1398, 1403 (D.Minn. 1993). There the court found:

> The assertion of half truths or the concealment of material facts can support a mail or wire fraud claim. A scheme reasonably calculated to deceive people of ordinary prudence and comprehension satisfies the intent requirement. Mail or wire fraud claims can also be established by demonstrating reckless misrepresentations. Plaintiff argues that the defendants uniformly failed accurately to disclose the value of their goods and failed to disclose

> and/or misrepresented [the defendant's] rights or intent with regard to default and the collection of interest. This uniform practice may be adequate to establish a RICO violation and, on the record before the court, this claim should be certified for class treatment.

*Id.* (citations omitted). In that case, the uniform "rent-to-own" contract signed by all the class members was itself alleged to be unconscionable and a violation of RICO and other statutes. *Id.* at 1401, 1404.

The *Heastie, MCI* and *Fogie* decisions at first glance operated to sway this Court away from its concerns that the overwhelming weight of the individual questions of reliance would render impossible a finding of predominance of common questions. In those three cases, however, the contractual documents themselves were alleged to amount to violations of RICO. In *Heastie,* the complaint centered around the "bait" of the original satellite dish contractor's contract and the "switch" of the less favorable bank contract. 125 F.R.D. at 671–73. In *MCI,* the contract itself was not the problem so much as the alleged uniform departure from the compensation plans outlined therein. 124 F.R.D. at 669–71. Additionally, the value of goods formula contained in the rent-to-own contract in *Fogie* was alleged to be a uniform misrepresentation of the goods acquired under the contract and, thus, fraudulent on its face. 867 F.Supp. at 1403.

The *Heastie* court avoided the reliance issue altogether and simply looked at the behavior of the defendants and the contracts issued by them to determine if there had been classwide RICO violations. 125 F.R.D. at 674–75. Similarly, the *Fogie* court adopted the RICO violation *per se* approach concerning contracts which contain patent mistruths or falsehoods. 867 F.Supp. at 1404. This Court does not feel comfortable with such an approach due to the language of the *Pelletier* decision stressing that reliance is an integral issue in any RICO fraud action. 921 F.2d at 1499–1500. Furthermore, in this case, the violation cannot be found through an examination of the contracts which Plaintiffs admit are not the central focus of the inquiry at hand. Other than the allegation

that the RAL contracts failed to disclose the referral fee arrangement between the Block Defendants and the Bank Defendants, Plaintiffs have not argued that there was any misrepresentation or other incident of fraud contained within the language of the contracts.

The *MCI* opinion is also distinguishable even though that case recognized the need to discuss the reliance issue. In that case, the district court inferred classwide reliance through the simple fact that all class members had accepted employment with the defendant: "the salespersons' reliance on the plans is demonstrated simply by their employment with MCI." 124 F.R.D. at 679. This case presents a more complicated picture than that in *MCI* and so this Court will not create a presumption of reliance as did that court.[8] *See Rodriguez v. McKinney*, 156 F.R.D. 112, 115–17 (E.D.Pa.1994) (commenting that, in RICO fraud action, "reliance may be presumed only 'where it is logical to do so' "). Detrimental reliance upon the alleged misrepresentation contained in the use of the term "Rapid Refund" is a matter which must be proven by each class member and no presumption is available to circumvent that reality.[9]

Both parties have waged a battle over the legal effect of this district's decision in *Bohannon v. Allstate Ins. Co.*, 118 F.R.D. 151 (S.D.Ga.1986), *non-related question certified*, 824 F.2d 950 (11th Cir.1987), *certified question answered*, 258 Ga. 131, 365 S.E.2d 838 (1988), *vacated and remanded on grounds not relevant*, 847 F.2d 740 (11th Cir.1988). In that case, Judge Murphy, visiting from the Northern District of Georgia, certified a national RICO class and effectively ruled that individual reliance was not a substantive element of the RICO claim. *Id.* at 158–59. Defendants argued that *Bohannon* would have been decided differently had the *Pelletier* decision from the Eleventh Circuit then been in effect. (*TR*, pp. 106–07.) This Court will not attempt to second-guess Judge Murphy nor will it follow *Bohannon* as persuasive authority. Rather, this Court will simply view *Bohannon* as a wrinkle in time and nothing more.

Defendants, like Plaintiffs, deluged this Court with a multitude of case cites in support of their argument pertaining to the predominance question. This Court has carefully read and studied all of these cases and finds two cases of particular worth.

*Freedman v. Arista Records, Inc.* was a RICO fraud class action which centered around the infamous revelation that the Grammy Award-winning rock group Milli Vanilli, composed of the dredlocked duo Fabrice Morvan and Rob Pilatus, was actually just a front group for other vocalists who, though they recorded the songs for which Milli Vanilli was credited, did not appear in person, either on the album covers, in music videos, or at live events. 137 F.R.D. 225, 226–27 (E.D.Pa.1991). The district court there summarized the defendant's attack under the predominance prong of Rule 23(b)(3):

---

**8.** Plaintiffs have cited many securities § 10(b)(5) cases through which they seek to convince this Court that reliance should be presumed if fraudulent behavior is found. This fraud-on-the-market theory was enunciated by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972). This Court will not and does not presume any sort of reliance through the *Affiliated Ute* decision. This Court is convinced that the *Affiliated Ute* presumption of reliance does not reach beyond § 10(b)(5) actions. *See Dekro v. Stern Bros.*, 540 F.Supp. 406, 418 (W.D.Mo. 1982).

**9.** This Court notes, however, that Defendants do not contest the fact that the Refund Anticipation Loan is a service option which falls under the greater rubric of Rapid Refund. (Testimony of Jenny Lillis at *TR*, pp. 24–26, 48.) In what is

perhaps Plaintiffs' chief contention, they argue that the Block Defendants' use of the term "Rapid Refund" to attract consumers to the Refund Anticipation Loan program amounted to a fraud upon those consumers. (Second Amended Complaint, ¶¶ 20–40.) As a result of the testimony of the Block Defendants' manager of media services, this Court understands that the Block Defendants maintain an in-house advertising agency which is responsible for the promotion of its products and services. (Lillis testimony at *TR*, pp. 21–25, 43–44.) It also appears evident to this Court that the Block Defendants, in engaging in this advertising, uniformly used the "Rapid Refund" term and/or logo as well as phrases such as "your money" or "your refund" in their advertisements for the RAL program. (Lillis testimony at *TR*, pp. 48–50.)

Defendants submit that individual testimony of each class member would be necessary to determine on what basis he or she made the purchase because the gravamen of the complaint is fraud. Essential to the claim of fraud is proof of reliance which may vary greatly among the purchasers. Defendant has shown through discovery that some purchasers, having enjoyed the music when heard on the radio, made a determination that they wanted to own the album without knowing anything about the vocalists. Thus, defendant offers that their decision to purchase could not have been based on the perceived fact that Pilatus and Morvan were the persons who sang the songs they enjoyed.

*Id.* at 227–28.

The court agreed with the defendant's argument and found that the question of reliance "is highly individualized." *Id.* at 229. The court noted that the question of what caused each consumer to purchase the album was complex and involved too many calculations to be made on a classwide basis. *Id.* The motion for Rule 23(b)(3) for certification was denied because such individual questions predominated over the common questions. *Id.*

This Court agrees with the *Freedman* court's terse and direct approach. In this class, there are millions of people—any of whom may or may not have known that this product was a loan. The class members, having paid the charges before assuming the loan, knew the costs of the loan and, indeed, the class representatives found the charge acceptable. (*TR*, pp. 78, 83.) Whether the advertising scheme and use of the term "Rapid Refund" induced any of these class members to believe that this was simply a refund fee rather than a high interest loan is, quite simply, a question which is individual to each class member. Additionally, the question of whether class members who were fully informed of the loan arrangement would have still taken the loan remains an individualized determination.

Counsel for Plaintiffs eloquently argued that, by the very terms of the loan, it should be found that no one fully knowledgeable entered into it. Discussing the existence of potential class members who knew the RAL was actually a loan instead of a direct refund, Attorney Hansen stated:

> [Y]ou have to rule on the record before you, I submit. And none of those people [who knew it was a loan] are here before the Court. None have been shown to exist. And I submit, Your Honor, at the end of the day, none will be shown to exist, because to show that they exist, Your Honor, they're going to have to find somebody who says, I don't care about 833 percent. I'm willing to cut out a kidney to get my refund a couple days early. There's not going to be such a person, Your Honor, it's illogical.

(*TR*, p. 133.)

Plaintiffs are again asking the Court to create and allow them to cross a bridge of presumption. That artificial structure will not be built and consequently the strong current of the predominance standard cannot be traversed. As with the entire reliance issue, this Court will not presume this lack of knowledge on the part of an entire class. The question of creating a presumption of reliance was thoroughly addressed in *Rodriguez v. McKinney*, when another judge from the Eastern District of Pennsylvania considered class certification in a RICO fraud case. 156 F.R.D. 112. There, individuals without high school diplomas or G.E.D.s alleged that a trade school defendant fraudulently induced them to enroll "by failing to inform them of their inability to benefit from coursework." *Id.* at 115. The "ability to benefit" was a term of art contained in a federal statute pertaining to federally insured students loans. *Id.* at 113 (citing 20 U.S.C. § 1091). By setting artificially low admission scores for those students without the equivalency of a high school diploma, the defendant allegedly induced the students into taking courses which could not improve their station in life and left the students with debts which were unmaintainable due to the student's inability to gain from the educational experience. *Id.* at 113–14.

Judge Brody refused to create a presumption of reliance in *Rodriguez:*

Plaintiffs argue that reliance should be presumed because every student would consider "ability to benefit" relevant to a decision to enroll in school. I disagree. It is not "logical" to presume reliance in this case under this theory. First, reliance may not be presumed from defendant's failure to disclose to students that they did not qualify as "able to benefit" within the meaning of the statute.... Second, reliance may not be presumed from defendant's failure to disclose to students their actual inabilities, regardless of their statutory designation. Students may have considered various factors in deciding to enroll in CareerCom schools. It is not apparent that they were persuaded solely by the school's representation of their ability.

*Id.* at 116 (citations omitted). Judge Brody then found that the individual reliance issues would predominate over the common issues and she denied certification as to that class. *Id.*

She distinguished, however, her decision in certifying another class because, in the second class, the students were alleged to have relied upon the receipt of the government loans which were obtained fraudulently by the defendant's misrepresentation to the government. *Id.* at 116–17. "Proof of this link will involve only the conduct of defendant and the government. Any single plaintiff would have to present the same proof of that conduct." *Id.* at 116. She further stated, "Reliance on student loans is implicit if a plaintiff proves that he or she had no means of attending school without financial assistance." *Id.* at 117. This third-party fraud theory of presumed reliance is inapplicable to the instant case while the earlier determination concerning the two-party misrepresentation/reliance issue is apposite.

In this case, it might very well be plausible that many of the class members operated under the presumption that they were getting a direct refund rather than a refund-secured high interest loan. This fact does not, however, compel this Court to create a presumption that every class member detrimentally relied on the alleged fraudulent misrepresentation.

To be succinct, this Court has read all of the cases cited by the parties in this case and, while none appear to be on point, the combined approach of the *Freedman* and *Rodriguez* courts is that with which the Court is most comfortable. This Court concludes that, because reliance must be addressed in this case and because it would be illogical to presume reliance and because each class member's subjective understanding of the status of the loan will have to be analyzed, this Court finds that the individual issues predominate over the common issues.

### B. Superiority.

■ At this point, the handwriting appears to be on the wall. However, for purposes of developing a complete record, this Court will continue on with the Rule 23(b)(3) analysis.

The superiority test of Rule 23(b)(3), on its face, requires the Court to find that the class action instrument would be better than, and not just equal to, other methods of adjudication. The four factors which are listed in this subsection (interest in controlling individual prosecutions, existence of other related litigation, desirability of forum, and manageability) are simply a guideline to help the district court determine the benefit of the proposed class action. FED.R.CIV.P. 23 advisory committee's notes.

This Court first looks to factor (A): "the interest of members of the class individually controlling the prosecution or defense of separate actions." FED.R.CIV.P. 23(b)(3)(A). Under this factor, at least one court has been hesitant to certify a class of people who otherwise would not be inclined toward litigation. *See "Agent Orange"*, 818 F.2d at 166. From the majority of courts, however, "[t]his factor has received minimal discussion in Rule 23(b)(3) actions." 1 NEWBERG ON CLASS ACTIONS § 4.29. This Court will neither ignore this factor nor attempt to assess the various litigation attitudes of those in the class. However, this Court notes that the record demonstrates that various members of this class have been trying to achieve relief under theories different than the federal RICO claim presented in this suit.

At the class certification hearing, counsel for the Beneficial and Greenwood Defendants argued that the class vehicle was not superior because the RICO Act includes provisions for treble damages as well as attorney's fees and, therefore, any putative class member could have a realistic day in court without having to rely upon class litigation. (*TR*, pp. 121–22.) Indeed, 18 U.S.C. § 1964 provides that a plaintiff suing under the civil enforcement provision of RICO "shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." This Court does not find this argument all too availing and comments that just because something is *technically* available does not mean that it *realistically* available.

The drafters of Rule 23 observed the distinction between the availability and feasibility of individual litigation options:

> The interests of individuals in conducting separate lawsuits may be so strong as to call for denial of a class action. On the other hand, these interests may be theoretic[al] rather than practical; the class may have a high degree of cohesion and prosecution of the action through representatives would be quite unobjectionable, or the amounts at stake for individuals may be so small that separate suits would be impracticable.

FED.R.CIV.P. 23 advisory committee's notes. Whichever way this factor is examined, this Court is of the opinion that it does not preclude a finding of superiority.

Under Rule 23(b)(3)(B), the district court should consider the "extent and nature of any litigation concerning the controversy already commenced by or against members of the class." This matter was discussed at the class certification hearing as well as at the initial scheduling conference which this Court held with counsel for the parties on March 21, 1996. This Court has knowledge of five relevant pending putative class actions. (*TR*, pp. 149–52.) *Basile v. H & R Block, Inc.* is a pending action in the Philadelphia Court of Common Pleas. The *Basile* plaintiff is seeking to certify a Pennsylvania class but there has been no ruling on the motion for certification. Two cases, *Beckett v. H & R Block, Inc.*, and *Peterson v. H & R Block, Inc.*, are pending in the Cook County, Illinois state court system. Both are attempting to certify national classes.[10] *Mitchell v. H & R Block, Inc.*, is pending either in the Northern District of Alabama or it may have been remanded to the state court system in Birmingham. The plaintiff in that case is attempting to certify an Alabama class. *Rizzo v. H & R Block, Inc.* is pending in the Western District of Missouri. That case, which was filed subsequent to this case, is the only other case which asserts a RICO claim and is attempting to certify a Rule 23(b)(2) class as opposed to a Rule 23(b)(3) class. The parties in that case are now involved in the briefing stages pertaining to the motion for certification.

There are three other tangentially relevant cases. *Cades v. H & R Block, Inc.* was pending in the District of South Carolina. The plaintiff in that case pressed Truth in Lending Act and National Bank Act claims regarding the RAL program. The district court apparently granted summary judgment without ruling on the motion for certification. The decision of the court was affirmed at 43 F.3d 869 (4th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2247, 132 L.Ed.2d 255 (1995). In two other cases, federal courts refused to certify classes challenging Defendants' RAL program: *Brown v. H & R Block, Inc.* (N.D.Ala. April 25, 1994) and *Abeyta v. Beneficial National Bank* (D.N.M.1993).[11] (Defs.['] Br., p. 12.)

After examining the status of these cases, this Court finds that it currently is in the most advanced position to decide the propri-

---

10. Counsel for the Block Defendants also indicated that one case, which was not identified by name, is pending in the Appellate Division of the Illinois state court system. In that case, the plaintiffs are appealing the dismissal of their complaint.

11. Defendants have cited these cases as persuasive authority that certification should be denied in this case. This Court, however, finds them without guiding value as the *Abeyta* ruling made no findings of fact or conclusions of law other than a perfunctory denial of the Rule 23 motion and the *Brown* decision, upon examining the transcripts of that hearing, appeared to be based largely upon the district court's view of the merits of the action as well as upon the inability of counsel to shoulder the costs of notice.

ety of class certification of these claims and that factor (B) does not operate to preclude certification of the class.

Rule 23(b)(3)(C) requires the court to evaluate the desirability of concentrating the litigation in a particular forum. No Defendant has raised an argument as to this factor and so the Court considers it uncontested. Furthermore, the Court recognizes that a class of this magnitude will present certain undesirable characteristics to any court. Because Plaintiffs and the several Defendants are from different parts of the country, travel is going to be required no matter in what forum this matter is litigated. As there is no high concentration of class members in any one forum and seeing that this Court is thoroughly familiar with the facts and law of this case, this forum is as desirable as one can be. *See Riordan*, 113 F.R.D. at 66. Factor (C) supports a finding of superiority.

The last factor that courts are required to consider in relation to superiority is the difficulty that may be "encountered in the management of the class action." FED.R.CIV.P. 23(b)(3)(D). "Of all the superiority factors listed in Rule 23, *manageability* has been the most hotly contested and the most frequent ground for holding that a class action is not superior." 1 NEWBERG ON CLASS ACTIONS § 4.32 (emphasis in original).

■■■ This Court observes that Defendants have issued dire warnings about the inherent unmanageability of a class of this scope. Of these warnings, the two most prominent and worthy of discussion are the manageability problems presented by the presence of potential counterclaims against a large portion of the class and by the size of the class itself coupled with the individual questions which need to be determined. A finding of unmanageability requires more than the case will be difficult to try or that the case involves novel challenges. *Goldwater*, 116 F.R.D. at 355–56; *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 693 (N.D.Ga.1991). There exists a strong presumption against denying class certification for management reasons. *Workers' Compensation*, 130 F.R.D. at 110; *In re South Central States Bakery Prod. Antitrust Litig.*, 86 F.R.D. 407, 423 (M.D.La.1980). In

this case, however, the question of manageability is one which is not to be taken lightly as the class is comprised of approximately 10 million members and the sheer magnitude of this undertaking cannot be ignored.

■■■ Defendants argue that many of the putative class members have defaulted on their loans and that, therefore, Defendants have counterclaims against them. Defendants insist that, because the situation arose out of the same nucleus of operative facts as those alleged in Plaintiffs' Second Amended Complaint, Federal Rule of Civil Procedure 13 renders them compulsory counterclaims. Therefore, it is said, the counterclaims must be presented in this action or be forever lost. Defendants argue that there are many of these counterclaims and the situation could well be impossible to deal with. This Court disagrees and finds that these counterclaims are not compulsory:

> [S]trong reasons support a determination that Rule 13 governing counterclaims is inapplicable in class action suits based on the language of Rule 13 and its underlying policies. Apart from Rule 23 and its derivatives, all the other rules of civil procedure, including Rule 13, were promulgated with reference to guiding the conduct of litigating parties. Rule 13 expressly is applicable only to *opposing parties*. A court may properly conclude that absent class members are not opposing or litigating adversaries for purposes of Rule 13, and therefore Rule 13 is inapplicable in a class context. Because compulsory counterclaims can only be potentially involved when Rule 13 applies, if absent class members are not opposing parties within the meaning of the rule, it follows that any counterclaims that may be permitted in a class action are not governed by Rule 13 and are purely discretionary with the court.

1 NEWBERG ON CLASS ACTIONS § 4.34 (emphasis in original).

This District has followed this approach before and this Court feels compelled to do likewise. *Hi–Co Enterprises, Inc. v. ConAgra, Inc.*, 75 F.R.D. 628, 632 (S.D.Ga.1976). Other courts have handled the counterclaim

issue differently. In *In re Bristol Bay, Alaska, Salmon Fishery Antitrust Litig.,* 78 F.R.D. 622, 626 (W.D.Wash.1978), the court severed those class members against whom counterclaims could be asserted. This was also the result in *Cosgrove v. First & Merchants National Bank,* 68 F.R.D. 555, 560 (E.D.Va.1975) and *Rollins v. Sears, Roebuck and Co.,* 71 F.R.D. 540, 543–44 (E.D.La. 1976). However, in *Rental Car of New Hampshire v. Westinghouse Elec. Corp.,* 496 F.Supp. 373, 381 (D.Mass.1980), the court held that debt collection counterclaims were permissive claims which could be prosecuted separately while in *George v. Beneficial Fin. Co. of Dallas,* 81 F.R.D. 4, 7–8 (N.D.Tex. 1977), the court denied certification because of the presence of debt collection counterclaims. Of all these authorities, this Court finds Newberg the most simple and common sensical and so will follow his theory of the character of these counterclaims. They are permissive and they, by themselves, will not defeat certification.

This Court, however, finds this class action unmanageable simply because of the persistence of the individual issues discussed in § IV(A) of this Order. Were this Court, for some reason, to find that if the individual questions, though present, did not predominate, it would still have to determine that the action was manageable. FED.R.CIV.P. 23(b)(3). Quite frankly, management of these individual questions of reliance would be impossible. Some courts have found that management of individual questions of reliance is possible through creative means. *See In re ORFA Securities Litig.,* 654 F.Supp. 1449, 1461 (D.N.J.1987) (citing cases which approve of separate hearings, questionnaires, and use of special master). Indeed, this Court has read that "[m]ore judges are aware that there are possibilities other than an across-the-board grant or denial of certification. Instead of wielding a meat axe, courts increasingly are operating with a scalpel." Arthur R. Miller, *Of Frankenstein Monsters and Shining Knights: Myth, Reality and the "Class Action Problem",* 92 HARV. L.REV. 664, 680 (1979). This Court has tried to find a scalpel with which it can excise the fatal defect in this case but, quite simply, there exists no such magic instrument.

Looking at the cases cited in *ORFA* and the methods discussed by Professor Miller, the courts sees that effective alternative management is possible in cases where the class numbers in the hundreds or thousands. But the class in this case consists of several million individuals. For each of those individuals, individual questions would have to be answered. This Court has considered alternative mechanisms, particularly the use of questionnaires, but is not convinced that the case would be made any more manageable through the use of any of the alternatives discussed in *ORFA* (or any other facilitative instrument).

With a class of this size, effective management of the individualized questions cannot be realized. Accordingly, factor (D) demonstrates that this procedure is not a superior method of adjudicating this dispute.

## V. *Conclusion.*

This Court has conducted the rigorous analysis required by Rule 23 and found that, for the national class, the prerequisites of Rule 23(a) have been met, but the requirements of Rule 23(b)(3) have not been satisfied. Furthermore, this Court will not certify the Georgia RAL subclass because Plaintiff Buford is an inadequate class representative. This denial of certification does not, however, operate to preclude any state agency from initiating a state law *parens patriae* action against the above-referenced Defendants.

In reaching the decision to deny certification, this Court comments that, because the law pertaining to the consideration of the issue of reliance at the certification stage is not patently clear, the determination was not readily achieved. This Court has come to its decision based upon what it considers to be a thorough analysis of the facts ·and existing case law; this analysis reveals that the case law includes no crystalline answer to this question and, therefore, this Court feels that an allowance of interlocutory appeal would be appropriate.

Indeed, this order involves a controlling question of law as to which there is substan-

tial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation; therefore, the Court will allow the Plaintiffs to file an interlocutory appeal pertaining to this issue. *See* 28 U.S.C. § 1292(b).